Joseph E. ZAUCHA, Raymond H. Baker, Thomas L. Fagan, Samuel A. Montani, James M. Burns, Jr., W. F. Hardy, James H. Hutchinson, Jr. and Charles F. Salvatora, Trustees of the Western Pennsylvania Teamsters and Employers Pension Fund, Plaintiffs,

v.

The POLAR WATER COMPANY, a Division of Borden, Inc. and Paul R. Baker, Paige Eich, Ralph D. Conte and Lawrence G. Irr, and Soft Drink Workers, Beer Distributors, Drivers and Allied Employers of America, Local Union 250, and General Teamsters, Chauffeurs and Helpers, Local Union 249, Defendants.

Civ. A. No. 76–562.

United States District Court,
W. D. Pennsylvania.

Feb. 2, 1978.

Henry M. Wick, Jr., Pittsburgh, Pa., for plaintiffs.

Ralph F. Scalera, Pittsburgh, Pa., for defendants.

Herman L. Foreman, Pittsburgh, Pa., for defendant Local 250.

Joseph J. Pass, Jr., Pittsburgh, Pa., for defendant Local 249.

## OPINION

DUMBAULD, Senior District Judge.

Under the declaratory judgment procedure provided by 28 U.S.C. 2201, the plaintiffs, trustees of a pension trust as authorized by 29 U.S.C. 186(c)(5), seek a determination by this Court whether certain individual defendants, who have been employees of defendant Polar Water Company and members of defendant unions, are eligible for certain pension rights under the applicable written agreements. The individual defendants have filed a motion for summary judgment, and it is agreed by the parties that the Court's determination may be made upon the basis of a stipulation of facts dated May 11, 1977, together with other documents of record, discovery having been completed to the satisfaction of all parties.

It is required by 29 U.S.C. 186(c)(5) that the trust fund be used "for the sole and exclusive benefit of the employees" and by 29 U.S.C. 186(c)(5)(B) that "the detailed basis on which such payments are to be made [be] specified in a written agreement with the employer."[1]

The trust fund for employee pensions was originally established on August 27, 1956, primarily for the benefit of members of the Teamsters' Union who were employees of motor carriers. It consisted of payments received from employers pursuant to the terms of collective bargaining agreements under Teamsters' auspices pursuant to which the employer agreed to make payments into the pension fund.

As in force on July 9, 1975, it contained in Article I, section 2, the following definition of "Employee": "The term Employee as used herein shall mean any person on whose account an Employer is, at the time of reference, making Employer Contributions into the Pension Fund, or for whom an Employer previously did make such Contributions and who is, at the time of reference still eligible for benefits to be provided by the Pension Fund." [Stipulation, Ex. 5].

The trust agreement was amended (and doubled in length), on December 15, 1976 (to be effective as of January 1, 1976), presumably to comply with ERISA. Article I, section 1.1 of the new agreement defines an "Employee" as "Any person or persons

---

1. The Employees Retirement Income Security Act of September 2, 1974 (ERISA), 88 Stat. 825 *et seq.*, contains similar provisions. 29 U.S.C. 1104(a)(1).

who is employed by an Employer and whose primary occupation is in a classification in a collective bargaining unit represented by a Local Union affiliated with Joint Council 40 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, and covered by a collective bargaining agreement between an Employer and Union, which agreement sets forth conditions as to wages, hours, working conditions and fringe benefits." [Stipulation, Ex. 6]. The same definition is found in section One (a) of the Pension Plan as in effect July 9, 1975 [Stipulation, Ex. 3] and in Article II, section 2.1 of the amended plan of December 15, 1976, (effective as of May 1, 1976, except as to provisions required by ERISA to be effective as of January 1, 1976). [Stipulation, Ex. 4].

Defendant Polar Water Co. became a contributing employer on September 1, 1958 and has continued as such to the present time [Stipulation, ¶ 9]. It has been party to a collective bargaining contract with defendant Teamsters' Local since at least October 24, 1956 [Stipulation, ¶ 4]. It has also been party to such a contract since at least May 26, 1954, with Local No. 250 of the Soft Drink Workers, Beer Distributor Drivers and Allied Employees [Stipulation, ¶ 3]. Apparently, that union is affiliated with Joint Council 40 of the Teamsters, although this is not expressly stated in the Stipulation.

The contracts in force through the years between Polar Water Co. and Local 249 cover route drivers or salesmen and helpers. There is also a classification known as "Water Cooler Driver." [Typical contract in Stipulation, Ex. 2]. The contracts with Local 250 cover "bottling room, stock room,

plant, case and maintenance employees, warehousemen, power-lift operators, shippers and checkers," [2] [Typical contract in Stipulation Ex. 1.].

Individual defendant Paige Eich was a member of Local 249 from July 1949 until May 31, 1975. The three other individual defendants belonged to local 250 from 1958, 1964, and 1965 respectively, until May 31, 1975. On the latter date all individual defendants, for unspecified reasons, resigned from the unions, and sought a statement as to their vested pension status. Individual defendant Paul R. Baker filed an application for pension. [Stipulation, ¶¶ 10–13]. These requests led the trustees of the fund to investigate the eligibility of the individual defendants to pension rights, and to file the instant suit [Plaintiff's brief, p. 4].

The question is whether the work of the individual defendants fell within the covered classifications, or was of supervisory character [Plaintiff's brief, pp. 9–10].[3]

In order to be eligible, insofar as service after the definition in effect on July 9, 1975, is concerned, the individual defendants' "primary occupation" must fall within a "classification in a collective bargaining unit . . . covered by a collective bargaining agreement" negotiated under the egis of Teamster's Joint Council 40. The scope of such agreements, insofar as pertinent here, has been outlined above. From examination of the affidavits of the individual defendants, the accuracy of which plaintiffs do not challenge, it is to be ascertained whether their work falls within the pertinent rubrics.

■ Paige Eich states that he was a driver salesman, from May 1949 to June 1959. From July 1959 to November 1965 he was a

---

**2.** Some additional job titles are listed in the wage scale set forth in Article II, 13(a) of the contract. [Stipulation, Ex. 1.]

**3.** 29 U.S.C. 152(3) provides that for purposes of the Labor-Management Relations Act, 1947, 61 Stat. 136, the term "employee" shall not include "any individual employed as a supervisor." 29 U.S.C. 152(11) defines "supervisor" as an individual having authority "to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other em-

ployees, or responsibly to direct them, or to adjust their grievances" if independent judgment is to be used. 29 U.S.C. 164(a) provides that no employer "shall be compelled to deem . . . supervisors as employees for the purpose of any law . . . relating to collective bargaining." None of these provisions appear to infect with illegality any of the contracts involved in this case, and our task is simply to construe these documents in accordance with their own terms.

"route-supervisor." From December 1968 until September 1972 he worked in the sales department, calling on wholesale accounts to sell bottled water. (Presumably he drove a vehicle to service these accounts). All this service appears to fall appropriately within the classification of route drivers or salesmen.

The only questionable item is his acting as "route-supervisor" where he was responsible for "making sure that the driver salesmen carried out their jobs properly in delivering customer products and soliciting new accounts." This task seems like the work of a glorified driver salesman, pursuing the same type of business as before, but acting on a larger scale through other drivers and salesmen and ensuring their proper performance of the customary work. From 1972 on he was a branch manager.

He did not negotiate any labor contracts; nor does it appear that he exercised any of the disciplinary powers of the sort enumerated in 29 U.S.C. 152(11).

We conclude that Eich is eligible.

■ Lawrence G. Irr was a salesman and cooler installer. "On a daily basis I had to personally load my assigned company vehicle with coolers and product." The only difference in his work and that of regular route-salesmen was that he made the initial contract with the customer, and set up the equipment for new accounts. The driver on the route serving that locality then took over upkeep. Irr also filled special orders where the route salesman was out of product or inadvertently failed to call on a customer.

Irr specifically denies ever exercising disciplinary powers or negotiating labor contracts.

The problem with Irr is that his work seems to fit a classification covered by the contract with Local 249 rather than that with Local 250, of which Irr was a member.

However, the definition in Article I, section 1.1 of the 1976 contract is sufficiently broad to permit eligibility to any person whose occupation is "in a classification in a collective bargaining unit represented by a local unit affiliated with Joint Council 40." [Italics supplied]. This language does not require that an employee's occupation be classified in the contract with the union of which he is a member; it suffices that the classification be found in a contract with a union affiliated with Teamsters' Joint Council 40. Hence since Irr's occupation falls within a classification covered by the contract with Local 249, he is eligible even though his own membership was in Local 250.

We conclude that Irr is eligible.

Paul R. Baker, now retired and applicant for a pension, was a commercial water cooler salesman from 1960 until 1976. He sold and rented water coolers to customers. This was a function performed by driver salesmen.

He specifically denies any exercise of disciplinary powers or contract negotiating.

What was said about Irr applies to Baker. Though he was also a member of the wrong union (Local 250), he is eligible since the type of work he did is covered by a classification in the contract with Local 249.

We conclude that Baker is eligible, and entitled to a pension in accordance with the plan since he is now retired.

■ Ralph D. Conte has been president of Polar Water Co. since June, 1964. From January 1955 until June 1964 he was general manager of the company, and was elected vice-president in 1963.

He states that on occasion he fills in when needed doing work of the type done by union members. However, it can not well be said that such work is his "primary occupation." His duties as general manager, vice-president, and president of the company would preclude that.

Moreover, he does not deny, and could not deny, that as a company official he would be bound to exercise disciplinary functions and contract negotiation when occasions arose for such activity.

That he is a union member does not establish his right to pension benefits. As well stated in Plaintiff's brief, p. 9

The provisions of the Pension Plan do not require union membership as a prerequisite for eligibility for pension benefits. Rather, the Pension Plan requires only that an individual be employed "in a classification in a collective bargaining unit represented by a local union affiliated with Joint Council 40." Thus, the mere fact that an individual Defendant is a member of Local 249 or Local 250 is not in any manner determinative of whether the individual is eligible for pension benefits.

■ Similarly, opinions of union officials are not binding. The pension fund is an entirely separate entity from the union and the company. *Lewis et al. v. Harcliff Coal Co.,* 237 F.Supp. 6, 7 (W.D.Pa.1965); *Gomez v. Lewis et al.,* 292 F.Supp. 560, 561 (W.D. Pa.1968).

■ However, under the original pension trust Article 1, section 3, makes payment of funds by an employer into the fund conclusive as to an employee's status. Hence Conte is eligible to such rights as may be derived from contributions by his employer paid in before the 1976 revision of the trust agreement.

Since in his case he can never qualify for a pension on his retirement under the new agreement, the proper equitable procedure with respect to his situation is for the trustees to return to him the amount of contributions paid in by his employer before the new agreement took effect, together with appropriate interest on that sum.

Accordingly the motions for summary judgment in favor of the individual defendants found eligible (Eich, Irr, and Baker) are granted; the motion for summary judgment in favor of Conte is denied, and the trustees of the fund are directed to return to Conte the amount of payments on his account made before 1976 by his employer, with interest.

This opinion shall be deemed to constitute the Court's findings of fact, conclusions of law, and response to the plaintiffs' requests for declaratory relief.