John F. TALARICO and Mastercraft Furniture Corporation, a Nebraska Corporation, Plaintiffs,

v.

The UNITED FURNITURE WORKERS PENSION FUND A, a Pension Trust Fund, United Furniture Workers of America, AFL–CIO, a National Labor Union, Carl Scarbrough, Trustee and International President of United Furniture Workers of America, AFL–CIO; United Furniture Workers of America, AFL–CIO, Local 18–B, a Local Labor Union, and Sam P. Sloan, Business Manager of United Furniture Workers of America, AFL–CIO, Local 18–B, Defendants.

Civ. No. 79–0–168.

United States District Court, D. Nebraska.

Nov. 16, 1979.

Frank F. Pospishil, Omaha, Neb., for plaintiffs.

Andrew Irving, New York City, David D. Weinberg, Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court upon the plaintiffs' motion for a preliminary injunction.

This is an action for declaratory and injunctive relief brought by the plaintiff, John F. Talarico, an employee of the plaintiff, Mastercraft Furniture Corporation [Mastercraft] and a participant in the United Furniture Workers Pension Fund A [Fund]. The Fund, established pursuant to agreements between the defendant, United Furniture Workers of America, AFL–CIO [UFWA], its affiliated local unions and various employers participating in the Fund, is

intended to provide pensions for certain employees and is subject to the provisions of the Employee Income Retirement Security Act [ERISA], 29 U.S.C. §§ 1001 *et seq.* Jurisdiction exists pursuant to the provisions of § 502 of ERISA, which confer jurisdiction without regard to the amount in controversy or the citizenship of the parties.

The plaintiff, John Talarico, a resident and citizen of the city of Omaha, Nebraska, at all times herein relevant, was an employee of Mastercraft and has been a participant in the Fund, together with other participating employees of Mastercraft. Mastercraft is a Nebraska corporation, engaged in the manufacture of furniture and related items.

At all times herein relevant, Mastercraft has been a party to various collective bargaining agreements, including the current effective collective bargaining agreement with the defendant, United Furniture Workers of America, AFL–CIO, Local 18–B [Local 18–B]. Local 18–B is the approved, affiliated local union of the UFWA. Defendant, Sam P. Sloan, is its business manager.

Under the provisions of the collective bargaining agreement with Local 18–B, Mastercraft is required to make contributions to the Fund on behalf of its employees who become eligible to participate in the Fund. The eligibility requirements specified in the collective bargaining agreement between Mastercraft and Local 18–B require that a new employee be employed for one year and over age 25 before Mastercraft commences such contributions.

The Fund is administered by a Board of Trustees and defendant, Carl Scarbrough, who is the chairman of the Board of Trustees and the international president of the UFWA.

For many years, and particularly under the contracts written on September 1, 1975, and renewed on September 4, 1978, Mastercraft and Local 18–B have entered into a series of collective bargaining agreements with respect to wages, benefits and terms and conditions of employment of Mastercraft's employees within the bargaining unit. With respect to the Fund, Article XIX of the collective bargaining agreements of September 1, 1975 [1975 Agreement] and September 4, 1978 [1978 Agreement] provides in pertinent part:

> Any new personnel hired as a regular full-time employee, shall become eligible for Pension Fund contributions by the Company, when he or she has been in the employ of the Company for a period of one (1) year, provided such employee has attained the minimum age of twenty-five (25) years on the anniversary date of such eligibility. Qualified employees who have fulfilled the required length of employment with the Company shall become eligible hereunder when such employee attains his twenty-fifth birthday.

In reliance on Article XIX, Mastercraft contends that employees hired after July 1, 1977 [1] have to attain one year of service and the age of 25 years before it is required to make contributions on behalf of such employees. However, the Fund, claiming that it is not a party to the agreements between Mastercraft and Local 18–B, and that it is the consistent policy of the Fund to refuse to permit employers participating in the Plan to exclude from their contribution program employees under the age of 25, refuses to accept contributions from Mastercraft made in this manner. The plaintiffs bring this action and their motion for a preliminary injunction to enjoin the defendants from refusing to accept contributions made on the basis set forth in Article XIX.

On June 29 and July 6, 1979, a hearing was held with respect to the plaintiffs' motion for a preliminary injunction. At the conclusion of the hearing, the Court ordered the parties to submit final written argument delineating their respective positions. Final written argument having been submitted, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

---

1. Under the 1975 Agreement, Article XIX applied to employees hired after July 1, 1974.

## THE FUND

*Background*

The Plan Document [Plan] of the Fund, a deferred benefit pension plan [Ex. # 3] established pursuant to a trust indenture [Ex. # 17] dated October 10, 1962, provides for contributions as follows:

### CONTRIBUTIONS

A.  Employer Contributions are to provide the cost of benefits currently accruing under the Plan, to liquidate the cost of the credits granted for Past Service, and to pay the administrative expenses of the Plan.

B.  Each Participating Employer shall pay over to the Trustees on or before the tenth day of each month the Contributions on behalf of Employees in the collective bargaining unit during the preceding calendar month.  Such payments shall be accompanied by reports on forms prescribed by the Trustees.

[Ex. # 3 at 15–16].

The Fund has assets of approximately $35,000,000.00 and receives contributions from 514 participating employers representing more than 17,000 employees.  Approximately $500,000.00 in contributions is received by the Fund each month [Tr. 65:2–23].

Responsibility for the administration of the Fund is placed in the Board of Trustees who are chosen equally by the participating employers and by the UFWA, respectively [Ex. # 3; Tr. 64:8–11].  For example, the Trustees regulate employer participation in the Fund.  By merely signing a collective bargaining agreement with the UFWA or an affiliated local, an employer does not become an employer participating in the Fund.  Instead, the Plan specifically provides that a "participating employer" is one with a collective bargaining agreement with the UFWA, "and authorized by the Board of Trustees to participate in the Plan upon appropriate action by the Employer acceptable to the Board of Trustees." [Ex. # 3 at 3].

*Practices and Policies*

In discharging their responsibility to effectively administer the Fund, the Trustees have adopted a policy of only accepting contributions on behalf of all permanent employees of a participating employer.  At the hearing, both Theodore Ferrara, the actuary for the Fund since its inception in 1962 [Tr. 121:15–19], and George Rothman, the Director of the Fund since 1974 [Tr. 63:9–22], testified that the Fund never accepted participation by any employer who excluded employees under 25 years of age from their contribution program [Tr. 67:21–25; 70:3–5; 122:20–123:2].

Rothman explained that the Fund learns that an employer has chosen to participate in the Fund by receiving from the UFWA the relevant contract language from the collective bargaining agreement or memoranda of agreement entered into by the UFWA or its constituent local unions [Tr. 69:11–22].  In reviewing such material, Rothman stated that he had never encountered an agreement, excepting the Mastercraft agreement, which provided for the exclusion of employees from the contribution program on the basis of age.  [Tr. 69:23–70:5].  Rothman also testified that from time to time he would attend the bargaining sessions to aid in the negotiations regarding pension benefits.  On a number of those occasions, the employers attempted to exclude from the program employees under 25 years of age.  Rothman consistently rebuked such attempts [Tr. 68:1–69:6].

The policy of the Fund to refuse to allow employers to exclude employees on the basis of age is essential to the actuarial and administrative soundness of the Fund.  Actuary Ferrara drafted the Plan assuming that contributions would be made for all employees, regardless of age; the only deviation from that assumption involves those few employers who exclude employees during their probationary period [Tr. 127:3–11; 128:12–23].  Ferrara described several ways in which the actuarial assumption was critical to the funding and benefit program of the Fund.

Since contributions produce gains to the Fund, insofar as people are contributed for who receive no benefits, we have to make assumptions as to what these will be. Since younger people are more likely to terminate employment without adding any rights to benefits, if we eliminate anybody under age 25 from contributions, we're going to lose all the gains from those people who participate in the Fund. If we lose the gains from the young people under age 25, we're going to have to change the benefit formula, reduce the benefit formula, because we're not going to get all these gains that we anticipate . . . .

[Tr. 123:21–124:7].

\* \* \* \* \* \*

[S]ince ERISA [Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.] says even though you may exclude [employees under age 25] from participation, once they become age 25 you got [sic] to give them the back credit. We'd be giving credit without having contributions for them, so therefore it would be a loss because we would still have to pay the benefits.

[Tr. 124:17–22].

\* \* \* \* \* \*

ERISA says that there must be a minimum contribution to a Pension Fund. If we eliminate the contribution from people under age 25, it's doubtful whether this Fund would meet its minimum funding contributions [sic] and there would be a deficit in the funding standard again.

[Tr. 125:1–6].

\* \* \* \* \* \*

[I]n performing an actuarial evaluation, what we have to do is take the contributions as they come in, accumulate them with interest, so that at retirement they are able to pay for the promised benefits to the retirees. If we don't get contributions under age 25, we are losing all the interest on this contribution. This is the biggest gain because there's [sic] forty years from age 25 to 65 and we're going to lose all that investment income be-

cause the money hasn't come in . . . . [T]his would be a serious drain on the investment income to the [F]und.

[Tr. 125:10–21].

Similarly, Director Rothman described how the exclusion of employees under 25 years of age would have an adverse effect on the administration of the Fund. According to Rothman, the Fund needs to know an employee's first date of employment in only two limited circumstances [Tr. 104:20–24]. First, if contributions are made for an employee on the first date an employer participates in the Fund, the Fund assumes that the employee has past service prior to that date, and obtains the date from the employer in order to calculate past service credit [Tr. 104:25–105:11]. Second, if a pension applicant has had contributions made for between 9 and 10 years, the Fund will ascertain from the employer whether there was a probationary period for which no contributions were made which, when added to the period of contributions, would total ten years and render the applicant eligible for a pension [Tr. 105:12–106:8]. That situation occurs rarely [Tr. 106:8] and involves a probationary period of, at the most, up to one year. However, if employers were permitted to exclude employees from contributions until age 25, the situation would apply more often to many more employees. For example, a pension applicant with only five years of contributions might have ten years of service if the applicant began work at age 20. As a result, the Fund would have to research the original dates of employment for a multitude of retirees, thereby increasing administrative difficulties and expense for the Fund [Tr. 106:9–107:15].

Thus, the testimony of Rothman and Ferrara makes clear that the Fund has consistently required contributions on behalf of all non-probationary employees without regard to age. The actuarial and administrative soundness of the Fund assumes and requires that this policy be followed on a uniform basis by the hundreds of employers who contribute to the Fund.

However, the Mastercraft agreements of 1975 and 1978 represent two instances where this policy was not followed. Therefore, a consideration of Mastercraft's involvement in the Fund pursuant to its collective bargaining agreements entered into over the years with Local 18–B, is necessary to this Court's determination.

## THE MASTERCRAFT COLLECTIVE BARGAINING AGREEMENTS

Pursuant to a collective bargaining agreement dated September 1, 1972 [1972 Agreement] with Local 18–B [Ex. # 18], Mastercraft began to make contributions to the Fund on behalf of its employees. The 1972 Agreement provided for contributions to the Fund on behalf of all employees "in the employ of the Company since July 1, 1969" [Ex. # 18 at § 19.02]. New employees became eligible for contributions upon the accumulation of appropriate length of service [Ex. # 18 at § 19.03]. The 1972 Agreement excluded no employee on the basis of age [Tr. 75:19–21]. The UFWA received the agreement on March 16, 1973 [Tr. 73:21–74:1] and that same day it forwarded that portion of the contract concerning pensions to the Director of the Fund for the Fund's review and use in administering Mastercraft's participation in the Fund [Tr. 74:6–75:4]. The 1972 Agreement was to remain in effect until September 1, 1975 [Ex. # 18]. Since the 1972 Agreement excluded no employees on the basis of age, the Fund accepted Mastercraft's contributions pursuant to that Agreement.

On September 12, 1975, Rothman received a letter from Sam Sloan dated September 10, 1975, enclosing a Memorandum of Agreement [1975 Memorandum] between Mastercraft and Local 18–B [Tr. 76:1–12; Ex. # 19]. The Memorandum referred to "a contract term of three (3) years commencing September 1, 1975 and ending August 31, 1978," and incorporated by reference an attachment describing "Basic Terms." The "Basic Terms" set forth the amounts that Mastercraft would contribute to the Fund. These rates differed from the contribution rates provided for under the 1972 Agreement. Rothman relayed the information set forth in the "Basic Terms" of the Memorandum of Agreement to the Fund's bookkeeper [Tr. 78:1–15; 88:24–89:9]. With that information, the Fund kept track of Mastercraft's contributions on the same basis as any other employer [Tr. 89:10–13]. In fact, the Administrative Assistant to the Chairman of the Fund wrote to Mastercraft and Sloan in the latter part of 1976 to remind them that Mastercraft was to increase its contribution to the Fund effective September 1, 1976 [Ex. # 22; Tr. 87:10–88:14]. The 1975 Memorandum contained no changes from the 1972 Agreement other than the rate of contribution.

However, the Fund did not ignore the fact that Sloan had sent a Memorandum of Agreement rather than a complete collective bargaining contract. Rothman testified that at Sloan's request as set forth in the September 10 letter [Ex. # 19], he brought the Memorandum of Agreement to Lowell Daily, Secretary-Treasurer of the UFWA and a trustee of the Fund, and indicated to Daily's secretary "that even though the [September 10, 1975] letter says 'contracts,' the actual documents attached are Memoranda of Agreements" [Tr. 78:5–7]. Daily's notice to Sloan acknowledging receipt of these materials accordingly referred to them as "memorandum agreements." [Ex. # 20].

Despite this notice from Daily to Sloan, the Fund never received the full text of the collective bargaining agreement for the period from September 1, 1975, through August 31, 1978 [Ex. # 1] [1975 Agreement]. Although Sloan testified that he had sent the 1975 Agreement to the UFWA at the time it was originally negotiated [42:3–10], Rothman testified that the Fund never received that Agreement [Tr. 78:16–21; 86:4–6]. Rothman's testimony is bolstered by a letter from Scarbrough to Sloan dated March 30, 1979 [Ex. # 8]. A postscript to this letter states:

Under separate cover, we are returning your work-copy of the 1975 contract. Our records continue to show that we

only received a Memo of Agreement, as per enclosed.

The "work-copy" referred to by Scarbrough was a marked-up copy of the 1975 Agreement [Ex. # 21] which the UFWA received on March 28, 1979 [Tr. 86:6]. Thus, Rothman's testimony and the Scarbrough letter clearly indicate that until the work-copy arrived on March 28, 1979, neither Rothman nor anyone at the UFWA had seen the 1975 Agreement [Tr. 86:15–19]. Rothman further testified that he "often received Memoranda of Agreements rather than formal Contracts" and that he understood the 1975 Memorandum to embody the changes in Mastercraft's participation in the Fund [Tr. 78:10–15].

The 1975 Agreement, which the Fund never received, permitted Mastercraft to exclude contributions for employees hired after July 1, 1974, until they were employed for one year and reached the age of 25. Neither the 1972 Agreement nor the 1975 Memorandum provided for such an exclusion.

In March of 1978, Sloan contacted Rothman to discuss his upcoming negotiations with Mastercraft. After discussing various problems relating to health insurance, Sloan told Rothman that the new contract might provide for contributions to the Fund by a percentage of earnings, rather than by a fixed amount [Tr. 90:3–15]. On March 31, 1978, Rothman sent to Sloan a letter enclosing standard pension and health language [Tr. 90:22–92:9; Ex. #'s 23 and 23A]. The pension language contained no provision for excluding employees under 25 from participating in the Fund. At Sloan's request, Scarbrough sent virtually the same material on October 5, 1978 [Tr. 94:22–96:9; Ex. # 24].

On December 5, 1978, the UFWA received the collective bargaining agreement between Mastercraft and Local 18–B for the period from September 4, 1978, through August 8, 1981 [Tr. 97:22–98:5; Ex. # 25] [1978 Agreement]. On that same day, the UFWA forwarded the language relevant to Mastercraft's pension contributions to the Fund [Tr. 99:1–10; Ex. # 25A]. Rothman

reviewed the Agreement and on January 12, 1979, he wrote Scarbrough, stating that:

> Sam [Sloan] signed an agreement which makes the employees wait one year for pension eligibility in addition to which he has allowed the employer to bring in the 25 year of age minimum that ERISA allows one to set.
>
> [Ex. # 26].

Thereafter, on February 6, 1979, the Fund's General Counsel advised Scarbrough that the exclusion "may not be countenanced by Pension Plan A . . . ." [Ex. # 4]. Scarbrough forwarded the General Counsel's analysis to Sloan and members of Local 18–B on February 9, 1979 [Ex. # 5]. After further correspondence, Scarbrough advised the Mastercraft employees participating in the Fund that after April 30, 1979, the Fund could accept no further contributions from Mastercraft on the exclusionary basis set forth in the 1978 Agreement; a copy of this letter was sent to Mastercraft. The Fund has since refunded contributions Mastercraft has made for the period after April 30, 1979 [Ex. # 27].

Clearly, until it received the 1978 Agreement on December 5, 1978, the Fund did not and could not have known that Mastercraft was excluding employees under 25 years of age from contributions. Indeed, when Mastercraft, through Sloan, returned its lists of employees with its contribution to the Fund, Mastercraft simply crossed out the names of employees for whom no contribution was made and wrote the words "No Pension" without any explanation [Tr. 26:3–27:22; Ex. # 13]. Mastercraft gave no indication that the deletion was made on the basis of age, and the list did not set forth the employees' ages [Ex. # 13].

## THE PROPRIETY OF INJUNCTIVE RELIEF

■ Within the Eighth Circuit, an alternative test has been adopted in preliminary injunction cases to determine the propriety of injunctive relief. Under this test, a preliminary injunction should issue

upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978). *Accord, Dakota Wholesale Liquor v. Minnesota*, 584 F.2d 847 (8th Cir. 1978).

Application of either portion of the *Fennell* test to the present case yields the conclusion that the granting of a preliminary injunction would be inappropriate.

*The Agreements as Binding on the Fund*

By their motion, the plaintiffs seek to compel the Fund and the other defendants to accept contributions by Mastercraft to the Fund on the selective basis set forth in the 1978 Agreement entered into by Mastercraft and Local 18–B. In support thereof, the plaintiffs contend that the provisions of that Agreement relating to Mastercraft's participation in the Fund, are unalterably binding upon the Fund. Neither the facts of this case, nor the relevant law support the plaintiffs' contention. The 1978 Agreement states that it was "made and entered into . . . by and between [Mastercraft] and [Local 18–B] and shall be binding upon the parties hereto" [Ex. # 2 at 1]. Neither the UFWA nor the Fund is named as a party thereto, and no representative of either of those entities executed that Agreement. Neither the UFWA nor the Fund participated in the negotiation of the 1978 Agreement [Tr. 38:5–15]. Sloan, who negotiated the Agreement is connected solely with Local 18–B and is neither an employee nor trustee of the Fund [Tr. 38:20–25].

The Fund constitutes a distinct and independent entity separate from both the UFWA and Local 18–B. *See NLRB v. Construction & General Laborers Union Local 1140*, 577 F.2d 16, 20 n. 6 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979); *Huge v. Overly*, 445

F.Supp. 946, 947 (W.D. Pa. 1978); *Zaucha v. Polar Water Co.*, 444 F.Supp. 602, 606 (W.D. Pa. 1978). The Fund is the only entity which can accept contributions made to it or pay benefits to employees of employers who make those contributions. Local 18–B does not credit contributions made on behalf of such employees. Mastercraft makes its contributions to the Fund in the form of checks payable to the Fund, not to Local 18–B or the UFWA [Tr. 39:3–40:11].

■ As a separate entity, the Fund is not bound by agreements entered into by local affiliates of the UFWA. In *Toensing v. Brown*, 528 F.2d 69 (9th Cir. 1975), the trustees of a fund, pursuant to a recommendation of the parties to a collective bargaining agreement, decided to give higher benefits to active employees than those given to retirees. The retirees brought suit to overturn the trustees' decision. The Ninth Circuit found that the trustees, having acted only after determining that the change was actuarially sound, acted within their discretion, and affirmed the lower court's decision. However, the court specifically rejected the notion that the recommendation of the parties to the collective bargaining agreement compelled that result:

> We wish to emphasize, however, that trustees have a duty to exercise their independent judgment in administering trust funds established under § 302 of the Labor Management Relations Act. Recommendations of collective bargaining parties may be adopted by the trustees in the exercise of their discretion, but such recommendations are not binding or obligatory.

*Toensing v. Brown, supra*, 528 F.2d at 72.

Likewise, in *Teamsters Local Union No. 688 v. Mizerany Warehouse, Inc.*, 413 F.Supp. 911, 913 (E.D.Mo.1974), the court, noting that a pension fund was an entity separate from a labor union, held that a release agreement entered into by the union and the employer was not binding on the pension fund. Accordingly, the fund was entitled to recover those contributions owed by the employer.

In this case, the plaintiffs set forth several theories to overcome the distinction between a trust fund and a labor organization. The Court is of the opinion that these theories are all without merit.

The plaintiffs first argue that the Plan "incorporates by reference" the 1978 Agreement. This is clearly not the case, in light of the context in which such references were made. The Plan states that it is "established pursuant to collective bargaining agreements" between the UFWA and employers in the furniture industry. This statement was made in order to satisfy the requirements of § 302 of the Labor-Management Relations Act. 29 U.S.C.A. § 186 (Supp.1979). That statute renders it unlawful for an employer to pay any money to a labor organization. Section 302(c)(5) exempts from that proscription those payments which are made to a jointly administered trust fund pursuant to a written collective bargaining agreement. 29 U.S.C.A. § 186(c)(5). Thus, the quoted language from the Plan renders payment to the Fund lawful. Although the Plan makes other references to collective bargaining agreements, only the rates or amounts of contributions and the definition of participating employees are left to those agreements for specification. Significantly, Section VI B of the Plan states that contributions are to be made "on behalf of Employees," not "participants." Therefore, while the obligation to contribute is created by a collective bargaining agreement, the identity of those for whom such contributions are to be made is set forth in the Plan itself.

Plaintiffs also attempt to tie the Fund to the 1978 Agreement by arguing that Sloan acted as an agent of the Fund in negotiating and administering the 1978 Agreement. However, as the Court noted previously, Sloan testified unequivocally that he had no connection with the Fund or the UFWA, and that he was employed solely by Local 18–B [Tr. 38:16–25]. Thus, there is no evidence that Sloan ever held himself out as an agent of the Fund.

The text of the Plan clearly establishes that the Fund is not bound by the collective bargaining agreements entered into by the UFWA and its affiliated locals. If such were the case, an employer could participate in the Fund by simply executing an appropriate agreement with the UFWA. The Plan provides that such action is not sufficient. Section I(2) of the Plan reserves to the trustees of the Fund the power to authorize an employer "to participate in the Plan upon appropriate action by the Employer acceptable to the Board of Trustees." Plaintiffs' contentions would render such language a nullity.

█ In short, the Fund, a trust administered by a Board of Trustees, half of whose members are in no way connected with the UFWA, exists separate and independent from the UFWA and its locals. The 1978 Agreement, to which the Fund was not a party, does not and cannot bind it, either by the terms of the 1978 Agreement, of the Plan, or by law.

### The Actions of the Trustees

While the above discussion demonstrates that the Fund is not bound by the collective bargaining agreements entered into by Mastercraft and Local 18–B, this does not put an end to this Court's determination. The Court must still undertake an examination of the actions taken by the trustees of the Fund in order to ascertain whether the trustees, in exercising their discretion to refuse acceptance of the Mastercraft contributions, acted reasonably, in light of the circumstances.[2]

---

2. At this juncture, the Court wishes to point out that it is of the opinion that the relief sought by the plaintiff does not lie against the UFWA, Local 18–B, Scarbrough or Sloan. The plaintiffs have moved for an order directing acceptance of contributions from Mastercraft on an exclusionary basis. The Fund is the only defendant which accepts contributions. Mastercraft's contributions were tendered in the form of checks payable to the Fund. It is the Fund alone which is rejecting those contributions. Therefore, it is a consideration of the actions of the trustees of the Fund which is central to the determination of whether plaintiffs are entitled to injunctive relief.

■ Section 404 of ERISA, 29 U.S.C. § 1104(a)(1)(A), imposes a serious obligation upon the trustees of the Fund to act to protect the Fund and its participants and beneficiaries:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

In carrying out this obligation, the trustees of the Fund must exercise their discretion to serve the interests of all the participants in the Fund. *See Toensing v. Brown, supra*, 528 F.2d at 72.

■ However, it is well settled that this Court's review herein is limited. *Distelrath v. Central States, Southeast and Southwest Areas Pension Fund*, 458 F.Supp. 172, 175 (E.D.Mo.1978). In *Bueneman v. Central States, Southeast and Southwest Pension Fund*, 572 F.2d 1208 (8th Cir. 1978), the Eighth Circuit, recognizing the wide latitude courts afford to the actions taken by trustees of pension funds in the management of those funds, set forth the applicable standard of review as follows:

[J]udicial review of the trustees' action is limited to determining whether such action has been arbitrary or capricious, or an abuse of discretion. . . . Judicial intervention in these cases is limited and courts are hesitant to interfere with the administration of a pension plan. (Citations omitted).

*Bueneman v. Central States, Southeast, and Southwest Pension Fund, supra*, 572 F.2d at 1209.

Applying this standard of review, the Court finds that the trustees of the Fund acted reasonably under the circumstances.

■ The determination of the Fund not to accept Mastercraft's contributions is consistent with the practice of the Fund and its actuarial and administrative policies. The uncontroverted testimony of Ferrara and Rothman makes clear that Mastercraft is the only employer out of more than 400 employers contributing to the Fund which excludes employees under 25 years of age from its contribution program. The record also demonstrates that whenever the Fund became aware that an employer proposed to exclude employees under 25 from its contribution program, the Fund advised that such exclusion was unacceptable.

Earlier in this opinion, the Court set forth the actuarial and administrative basis for the Fund's policy of refusing to permit employers to exclude those employees under 25 from its contribution program. Briefly stated, the Fund's actuarial assumptions require contributions on behalf of all employees, regardless of age, in order that the Fund may realize gains resulting from the termination of employment by younger workers, pay full benefits for all of an employee's years of service, meet the funding requirements of ERISA, and earn adequate investment income to provide for retirees. Administratively, the Fund reviews applications for retirement benefits on the assumption that employees for whom contributions are first received after the employer first began to contribute to the Fund, commenced employment on that date.

For these reasons, the Plan provides that participating employers will make contributions "on behalf of Employees." The only exception permitted by the Fund applies to new employees for whom an employer may abstain from making contributions for up to one year. As the evidence in this case makes clear, the actuarial and administrative impact of such a limited exception is minor in comparison to the impact of permitting employers to withhold contributions for the years up until an employee reaches the age of 25.

In short, the actuarial and administrative soundness of the Fund is essential to the Fund's ability to pay benefits to participants and their beneficiaries. Thus, by asserting the requirement that employers contribute to the Fund for employees, regardless of age, the trustees serve the interests

they are required to protect pursuant to § 404 of ERISA, 29 U.S.C. § 1104(a)(1)(A).

The plaintiffs point out that the exclusionary provisions of the collective bargaining agreements reflect the substance of 29 U.S.C. § 1052(a)(1)(A), which provides as follows:

No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—

(i) the date on which the employee attains the age of 25; or

(ii) the date on which he completes 1 year of service.

However, as the plaintiffs readily admit and as a reading of that section clearly shows, the conditions of participation provided under § 1052(a)(1)(A) are permissive. In no way does that section compel a plan to impose those conditions or accept those conditions when agreed to by an employer and a union. Nothing in that section limits the discretion of trustees to structure a pension plan to require participation on a basis more liberal than that authorized by the statute.

The plaintiffs also contend that the Fund's rejection of Mastercraft's contributions constitutes an attempt by the trustees of the Plan to further union goals in violation of their fiduciary duties as provided for in § 1104(a)(1) of ERISA. In support of their position, the plaintiffs rely on the case of *NLRB v. Construction & General Laborers Union Local No. 1140, supra.*

In *Local No. 1140,* the National Labor Relations Board sought a judgment that a labor organization had violated court orders proscribing unlawful secondary activity. The activity involved picketing arranged by the business manager of the union, who also served as a trustee of certain pension and trust funds. The court observed that "trust funds for the benefit of employees are separate entities apart from labor organizations" and that a person may "operat[e] in separate spheres as an officer of a union and a Section 302 trustee." *NLRB v. Con-*

*struction & General Laborers Union Local 1140, supra,* 577 F.2d at 20 n. 6, 21. The court found that since the primary object of the picketing concerned a primary labor dispute involving the union, the union officer/fund trustee was acting as an officer, not a trustee, in arranging the picketing.

In the present case, unlike the *Local 1140* case, there is no dispute between union and management. Instead, the conflict is between Mastercraft's desire to exclude certain employees from their contribution program and the Fund's desire to include such employees in order to satisfy its actuarial and administrative necessities. *Local 1140* establishes that because a fund and a labor organization are separate entities and the same individual may have positions in each of those entities, it is necessary to determine whether the particular actions serve the purposes of the Fund or the union. In this case, there is clearly no evidence in the record that any needs other than those of the Fund played a part in the Fund's decision to reject Mastercraft's contribution.

Accordingly, the Court finds that the Fund acted reasonably to protect the interests of the thousands of employees who rely on the actuarial soundness of the Fund in planning for their retirement. A multi-employer pension plan such as the Fund cannot be forced to jeopardize that actuarial soundness by violating a policy essential to that soundness to accommodate the desires of a single employer. While the contribution program which Mastercraft seeks to impose upon the Fund is contained in a collective bargaining agreement, the Fund's trustees have the right under the Plan and the duty under ERISA to exercise their independent judgment on the acceptability of that program. The record shows that their judgment was exercised in a reasonable and well-considered manner.

*Estoppel*

Finally, the plaintiffs argue that by accepting Mastercraft's contributions under the 1975 Agreement which excluded employees under 25 years of age, the Fund is estopped from rejecting those contributions because of that exclusion.

The plaintiffs, as the parties pleading estoppel, have the burden of proving the elements of estoppel. *Indemnity Ins. Co. v. Lane Contracting Corp.,* 227 F.Supp. 143, 152 (D.Neb.1964); *Bors v. McGowan,* 159 Neb. 790, 797, 68 N.W.2d 596, 601 (1955). In *Indemnity Ins. Co. v. Lane Contracting Corp., supra,* Judge Van Pelt of this Court set forth the elements of estoppel as follows:

> To constitute an equitable estoppel, there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice. *Walker v. Ehresman,* 79 Neb. 775, 113 N.W. 218. *Indemnity Ins. Co. v. Lane Contracting Corp., supra,* 227 F.Supp. at 151, *quoting American Surety Co. of N. Y. v. Smith, Landeryou & Co.,* 141 Neb. 719, 4 N.W.2d 889 (1942).

In light of the facts in this case, it is clear that the doctrine of estoppel is inapplicable.

As the Court noted previously in this opinion in discussing the Mastercraft Agreements, until December of 1978 the Fund neither knew nor had reason to know of Mastercraft's exclusion of employees on the basis of age. The 1972 Agreement contained no such exclusion. The Fund never received a copy of the 1975 Agreement, but only secured the 1975 Memorandum. This Memorandum was sufficient for the Fund's administration of Mastercraft's participation and nowhere stated that employees would be excluded until reaching the age of 25. The Fund never received the complete 1975 Agreement and only when it received the 1978 Agreement on December 5, 1978, did the Fund learn for the first time that Mastercraft would not be making contributions for employees under 25 years of age.

That Sloan and Local 18–B knew of the exclusion is irrelevant. As the Court noted earlier in this opinion, the Fund is a separate entity of which Sloan is neither an agent, trustee or employer. In fact, Sloan was informed that the UFWA had received only the 1975 Memorandum, but he never sent in a copy of the complete agreement. Moreover, before Sloan negotiated the 1978 Agreement, the Fund sent him appropriate contract language which provided for no exclusion on the basis of age.[3]

While there is no dispute that the Fund accepted contributions from Mastercraft which excluded employees under the age of 25, such acceptance does not estop the Fund from subsequently taking discretionary action inconsistent with that acceptance. *Phillips v. Kennedy,* 542 F.2d 52, 55 n. 8 (8th Cir. 1976); *see also Reiherzer v. Shannon,* 581 F.2d 1266 (7th Cir. 1978); *Hodgens v. Central States, Southeast & Southwest Areas Pension Fund,* 94 LRRM 2507, 2508 (E.D.Mich.1976). The evidence clearly shows that the Fund did not have knowledge of the facts nor did it intend to deceive Mastercraft. At the most, the Fund was merely mistaken in accepting those contributions. Actions taken due to ignorance or innocent mistake are not enough to estop a party from asserting a position contrary to those actions. *In re Bremer's Estate,* 141 Neb. 251, 256, 3 N.W.2d 411, 414 (1942).

The plaintiffs further contend that because the Fund received enrollment cards [Ex. # 14] and rosters of Mastercraft's eligible employees [Ex. # 13], the Fund should have known of the exclusion. If the Fund had compared the names excluded from the roster with the words "No Pension" with the birthdate on the enrollment cards, seemingly a pattern of excluding employees under the age of 25 might have

---

3. At the hearing, the plaintiffs objected to the introduction of documentary evidence [Ex. #'s 19, 20, 23 and 26] to support the fact that the Fund had no knowledge of the exclusion. At the time, the Court conditionally received the evidence. However, the Court now finds that the evidence is clearly relevant and should be admitted unconditionally since the issue of knowledge is essential to the plaintiffs' claim of estoppel.

emerged. However, the Fund had no reason to make that comparison, because Mastercraft did not indicate on the roster that the exclusions were on the basis of age, and the Fund had good reason to assume, based on the 1975 Memorandum, that the length of service exclusion of the 1972 Agreement explained the deletion on the roster. Knowledge cannot be imputed to the Fund on the basis of hindsight; the Fund's actions must be evaluated in light of its knowledge at the time that it acted. *James Talcott, Inc. v. Associates Discount Corp.,* 193 F.Supp. 642, 645 (E.D.Ark.1961), *aff'd* 302 F.2d 443 (8th Cir. 1962).

In sum, the Court finds that the Fund did not know and had no reason to suspect that Mastercraft was excluding employees under the age of 25 during the period in which the 1975 Agreement was in effect. The Fund accepted Mastercraft's contributions in good faith, believing that those contributions were consistent with the Fund's policy of barring exclusions on the basis of age. Immediately upon learning otherwise, the Fund acted to bring this matter to the attention of the parties to the 1975 Agreement. Accordingly, the plaintiffs' claim of estoppel is without merit.

### CONCLUSION

From the foregoing discussion, it is clear that the plaintiffs have not made a clear showing of either probable success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation. The plaintiffs' contentions that the Fund is bound by the agreements entered into by Mastercraft and Local 18–B and that the actions of the Fund's trustees were arbitrary or capricious, or an abuse of discretion, are without merit. Nor can the plaintiffs prevail on their claim of estoppel in light of the record in this case.

Moreover, the plaintiffs have failed to clearly show either that they would suffer possible irreparable injury or that the balance of hardships tip decidedly in their favor. The testimony of Ferrara and Rothman clearly demonstrates that the Fund will suffer a significant hardship if compelled to accept Mastercraft's contributions. Accepting those contributions in the manner in which Mastercraft proposes would have a devastating impact on the actuarial and administrative soundness of the Fund. The possible hardships put forth by the plaintiffs pale by comparison [*See* Ex. # 12].