177 N.J. Super. 142 (1980)
425 A.2d 1068
THE TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC., SUCCESSOR OF THE TRUSTEES OF THE TRUCKING EMPLOYEES OF THE PASSAIC & BERGEN COUNTY PENSION FUND, PLAINTIFF-RESPONDENT,
v.
JOSEPH VRABLICK AND THEODORE LAZAR AND L & V TRUCKING, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1980.
Decided December 31, 1980.
*145 Before Judges SEIDMAN, ANTELL and LANE.
Patrick J. McAuley argued the cause for appellants (Conway, Belsole & Gardner, attorneys; Bernard F. Conway and Patrick J. McAuley on the brief).
Edward A. Cohen argued the cause for respondent (Schneider, Cohen & Solomon, attorneys).
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
Defendants appeal from a judgment in the total amount of $12,369.40 entered in favor of plaintiff after a jury trial. The litigation involves a claim by The Trucking Employees of North Jersey Welfare Fund, Inc. (pension plan) that defendants Joseph Vrablick and Theodore Lazar had knowingly misrepresented themselves to be employees of defendant L & V Trucking, Inc., (L & V) entitled upon retirement to pension benefits under the plan administered by plaintiff. The jury award was for benefits paid to them in the respective amounts of $5,528 and $6,841.40.
*146 The principal issue is whether the individual defendants were covered under a pension plan for trucking employees established under a contract entitled "National Master Freight Agreement Covering Over-The-Road and Local Cartage Employees of Private, Common, Contract and Local Cartage Carriers," between the associated employees engaged in that business and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (commonly known as the Teamsters Union). It is not in dispute that L & V is an employer bound by the nationwide agreement and also by a supplemental one applicable to a group of local unions in the New Jersey-New York area. If defendants are found not to have been covered employees under the pension plan, then the further issues to be resolved are the correctness of the jury's determination that defendants were guilty of willful misrepresentation and the trial judge's rejection of their defense of estoppel.
Joseph Vrablick and Theodore Lazar are brothers-in-law who entered the trucking business in 1944 with one truck. Their operation at that time and up to the present consisted primarily of trucking for the textile industry. To enable them to haul freight, they were required to join the Teamsters Union. They incorporated as L & V Trucking, Inc. in 1946, each owning 49% of the stock, with the remaining 2% divided equally between their wives. Vrablick and Lazar and their spouses have always been the sole officers and directors of the company. Although the business expanded over the years to the point where the company employed approximately 30 drivers, the two men continued to drive trucks, picking up freight and making deliveries generally in the New York area.
The pension plan here involved was created in the early 1960's. Since its inception, L & V has made the compulsory employer contributions to the plan on behalf of its covered employees as required by the union contract. The employees do not contribute to the fund. Vrablick and Lazar listed themselves as trucking employees in the weekly reporting forms until *147 their retirement applications were filed. Prior to 1969, the weekly reports merely listed the employees for whom contributions were made for that week and the total amount of hours worked by each. Commencing in 1969 the employer was required to certify on the report "that each and every person whose name is set forth above and for whom contributions are being made is an employee of this Employer covered by a written collective bargaining agreement...." After 1975, by which time defendants were already receiving pension benefits, there was an additional certification that none of the listed employees was "an owner or part owner of this company or employed as a supervisor in any managerial capacity."
Vrablick's application for a retirement pension was filed in August 1971 and approved in November of that year. His benefits were to be $300 per month for five years and $275 per month thereafter. Lazar's application, filed in January 1972, was approved the following month. He was to receive $375 per month for five years after which the benefits would be reduced to $275 per month. It is to be noted that the compensation of each had been upwards of $36,000 per year, without separate amounts being allocated for their services in driving a truck. They were paid essentially the same amounts after their "retirement," and they continued actively to run the business in all other respects.
In May 1975 the pension plan's counsel advised the trustees that it had come to their attention that Vrablick and Lazar were owners of L & V and, therefore, it was questionable whether they were "covered employees" eligible to receive pension benefits. In due course this lawsuit was instituted to collect from defendants the pension payments which had been made to them over and above the employer contributions on their behalf.
We consider first whether Vrablick and Lazar were "covered employees" entitled to participate in the pension plan. At the close of the proofs, the trial judge in charging the jury submitted special interrogatories, reserving to himself for later *148 determination the equitable defenses raised by defendants. On the issue of covered employment the interrogatory with respect to each of the individual defendants, which the jury answered in the negative, was whether he was "a person employed in the bargaining unit whose employment was governed by a collective bargaining agreement."
Preliminarily, we question the propriety of submitting that issue to the jury, although no objection was made at the trial and the point is not raised in the appellate briefs. The construction of a written agreement is ordinarily a matter for the court and should not be left to the jury unless the meaning is uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation. Bedrock Foundations, Inc. v. Geo. H. Brewster & Sons, Inc., 31 N.J. 124 (1959); Michaels v. Brookchester, Inc., 26 N.J. 379, 387 (1958). The trial judge here made no finding of uncertainty or ambiguity necessitating the intervention of the jury. He simply summarized for the jury the provisions of the pertinent documents, noted the opposing contentions with respect to coverage and left it to the jury to find from the evidence which contention had been established. We have no doubt that the construction of the contract and pension plan here involved, as they related to covered employment, was exclusively for the court. Nonetheless, since in our view the interrogatory was correctly answered, we need not pursue further the matter of the jury's performing the task that should have been assumed by the trial judge.
The pension plan in this case is governed by the provisions of the Welfare and Pension Plans Disclosure Act, 29 U.S.C.A. § 301 et seq. (repealed and replaced effective January 1, 1975, by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 et seq.). The supplemental agreement with the Teamsters Union obligated each employer, including L & V, to contribute to the local union health, welfare and pension funds a specified amount per hour of paid employment for each employee covered by the agreement.
*149 The individual defendants contend that as truck drivers they qualified for eligibility under the pension plan. They overlook, however, that they were also the principal stockholders of the corporation, as well as directors, officers, managers and supervisors. Corporate directors and officers may be considered employees in certain contexts, such as, for example, workers' compensation, social security or unemployment compensation acts. 2 Fletcher, Cyclopedia Corporations (1969 Rev.), § 266.1 et seq. But simply being employees of the corporation for the requisite number of years is not enough for entitlement to pension benefits; it must be shown that the employee is one for whom the pension plan was intended.
"Covered employment," as the term appears in the pension plan, is defined therein as "employment of an Employee by an Employer, as those terms have been defined." "Employer" is one who has a collective bargaining agreement with the union "requiring periodic payments to the ... [pension plan], for the purpose of providing pensions to the employees subject to the agreement." And "employee" means any person employed by an employer in a bargaining unit "for which the employer is obligated by his agreement with the union to contribute to the Pension Fund." According to the collective bargaining agreement the employees covered by the agreement are truck drivers, helpers and any other employees "as may be presently or hereafter represented by the Union, engaged in the General Trucking Industry."
An essential requirement of a pension fund such as the one here involved is that it be for the "sole and exclusive benefit of the employees of such [contributing] employer" or their families and dependents. 29 U.S.C.A. § 186(c)(5); see Zaucha v. Polar Water Co., 444 F. Supp. 602 (W.D.Pa. 1978); Dohrer v. Wakeman, 14 Wash. App. 157, 539 P.2d 91 (Ct.App. 1975); and cf. Shallcross Express v. Local 478 Pension Fund, 119 N.J. Super. 196, 204 (Law Div. 1972). The union contracts and the pension plan plainly limit pension benefits to those employees who work under a collective bargaining agreement between the employer *150 and the union and on whose behalf the employer is required to make contributions to the fund. Aitken v. IP & GCU-Employer Retirement Fund, 604 F.2d 1261, 1264 (9 Cir.1979). Union membership does not by itself establish a right to pension benefits. Zaucha v. Polar Water Co., supra, at 605. Nor does the mere payment of money into such a fund create eligibility to receive benefits. Dohrer v. Wakeman, supra. An employee who may not by law be included within a union contract cannot qualify as a beneficiary of a pension plan established for the exclusive benefit of the employees covered by the collective bargaining contract.
Interpreting a pension plan agreement permitted under 29 U.S.C.A. § 186 is a matter controlled by federal law, Aitken v. IP & GCU-Employer Retirement Fund, supra at 1264, as is the determination of who is an employee within the Labor-Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq. National Labor Rel. Bd. v. Hearst Publications, 322 U.S. 111, 123-124, 64 S.Ct. 851, 856-857, 88 L.Ed. 1170, 1180 (1944). Under the latter statute, employees have the right to organize or join organizations and to bargain collectively through representatives of their own choosing. 29 U.S.C.A. § 157. But the term "employee," as defined in section 152(3), specifically excludes certain enumerated individuals including "any individual employed as a supervisor." "Supervisor," as used in the statute, means "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them...." Beyond this, however, there are other higher echelon "managerial employees" who have historically been considered as excluded from the act even though not specifically referred to therein. NLRB v. Bell Aerospace Co., 416 U.S. 267, 279-285, 94 S.Ct. 1757, 1764-1767, 40 L.Ed.2d 134, 145-149 (1974). "Managerial employees" are defined as those who formulate and effectuate management policies by expressing and making operative the decisions of their employers. Id., 416 U.S. at 288, 94 S.Ct. at 1768, 40 L.Ed.2d at 150; see also NLRB v. *151 Yeshiva University, 444 U.S. 672, 681-682, 100 S.Ct. 856, 862, 63 L.Ed.2d 115, 125 (1980). For the purpose of the act, anyone who possesses such a right or power of control over the conduct of the enterprise "as to have a responsibility for its labor affairs and relations, or has been exercising such a dominion over its labor affairs and relations in fact, may properly be treated as an employer." National Labor Relations Bd. v. New Madrid Mfg. Co., 215 F.2d 908, 913 (8 Cir.1954).
We have no hesitancy in concluding that the pension plan in this case was intended to be for the sole benefit of the trucking employees in the bargaining unit and not for the benefit of the principals of the corporation even though they may also have functioned as truck drivers. Vrablick and Lazar were for all intents and purposes the employers or, at the very least, managerial employees. In neither case could they legally have been included among the employees covered by the union contract and, for that reason, both were disqualified by the plain language of the pension plan from participation in its benefits.
Defendants contend that the record before the trial court is insufficient to support the jury's findings of fraud and the verdict "must be reversed as a miscarriage of justice." Two arguments are advanced. The first, that the record fails to establish their ineligibility for participation in the pension plan is clearly without merit and requires no discussion beyond that which we have already said on the subject. The second is that "due to the fiduciary duties owed by the trustees as a matter of law under the circumstances herein there was no justifiable reliance by the trustees on the representations made either by L. & V. or by the individual defendants." We disagree. Defendants seeks to shift to the trustees of the pension plan the onus of advising them of the facts relevant to their coverage. We reject the assertion that the certification added to the weekly report in 1969, referred to earlier hereinabove, was insufficient as a matter of law "to support a finding that the trustees reasonably or justifiably relied upon said certification." The certification plainly and unmistakably assured the plan that the persons *152 listed were employees covered by the collective bargaining agreement.
We are satisfied that the jury could have found, as it did, that the representation by Vrablick and Lazar that they were employees covered by the agreement was untrue. Further, they must have known that they could not be the employer constituting management and at the same time be employees protected by the labor union against management. We are satisfied, moreover, that defendants could not have been misled in any way by the trustees of the plan with respect to eligibility for pension benefits. The case of Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334 (1979), on which defendants rely, is distinguishable on its facts and inapposite. Also inapplicable is Shallcross Express v. Local 478 Pension Fund, supra, in which an employer was permitted to recover from the fund contributions it continued to make on behalf of employees initially covered by the union contract after they had become ineligible because of change in status to supervisor or change in job to one not encompassed within the contract. In short, there was sufficient evidence in the record to support the jury's finding of misrepresentation on the part of defendants.
With respect to the issue of equitable estoppel, defendants argue that the failure of the trustees to comply with their fiduciary duties, i.e., to explain clearly the rights and obligations of a beneficiary of the pension plan, should preclude them from later asserting that the pension benefits should be terminated. They contend additionally that by reason of the trustees' approval of defendants' applications and their payment of benefits for several years, they should be prevented from disclaiming coverage.
Since the rights and liabilities of the parties arise out of pertinent federal statutes, the availability of the defense of estoppel is controlled by federal law. Thurber v. Western Conf. of Teamsters Pension Plan, 542 F.2d 1106, 1108 (9 Cir.1976). Cf. Sola Elec. Company v. Jefferson Elec. Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942). The provisions of 29 U.S.C.A. *153 § 186 are intended to insure that employer contributions to a pension trust fund are only for a proper purpose and that the benefits from the fund reach only the proper parties. Thurber v. Western Conf. of Teamsters Pension Plan, supra; Moglia v. Geoghegan, 403 F.2d 110, 117 (2 Cir.1968), cert. den. 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). The pension plan here involved was designed for the sole and exclusive benefit of the employees of the contributing employer. 29 U.S.C.A. § 186(c)(5). The trustees of the plan could not legally pay benefits to an ineligible recipient. The doctrine of estoppel may not be invoked to compel an illegal act. Thurber v. Western Conf. of Teamsters Pension Plan, supra at 1109; and see Aitken v. IP & GCU-Employer Retirement Fund, supra, 601 F.2d at 1267. As the court said in Phillips v. Kennedy, 542 F.2d 52, 55 n. 8 (8 Cir.1976), "the actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan."
We have carefully considered all the other arguments made by defendants and find them without merit.
Affirmed.