580 F.Supp. 180 (1983)
John W. MORSE, Individually and as a participant in, and a beneficiary of, the New York State Teamsters Conference Pension and Retirement Fund, Plaintiffs,
v.
The NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, and Irving Wisch, Kepler Vincent, T. Edward Nolan, Rocco F. DePerno, Victor Mousseau, Paul E. Bush, and Jack Canzoneri, As Trustees of the New York State Teamsters Conference Pension and Retirement Fund, and Al Sgaglione, Executive Administrator of the New York State Teamsters Conference Pension and Retirement Fund, Defendants.
No. CIV-80-862C.
United States District Court, W.D. New York.
November 9, 1983.
*181 *182 Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y. (Paul R. Braunsdorf, Rochester, N.Y., of counsel), for plaintiffs.
Peter P. Paravati, P.C., Utica, N.Y. (Peter P. Paravati, Utica, N.Y., of counsel), for defendants.
CURTIN, Chief Judge.
This is plaintiff's motion for summary judgment and defendants' cross motion for summary judgment involving the scope and authority of pension fund trustees to accept and refuse to accept pension fund contributions. The material facts are not in dispute, but before discussing the issues presented by the parties, it is helpful to briefly outline the events leading up to the instant motions.
Defendant New York State Teamsters Conference Pension and Retirement Fund [the Fund] was established by employers and local unions representing the International Brotherhood of Teamsters in 1954, and the Trust Agreement was modified to comply with the Employee Retirement Income Security Act of 1974 [ERISA], 29 U.S.C. § 1001 et seq., on January 1, 1976. The Fund is a multi-employer Taft-Hartley pension plan. The purpose of the Fund, as defined in the indenture of trust, is
to provide pension or retirement benefits to members of the Union covered ... under collective bargaining agreements between the Union and Employers containing a pension or retirement benefits clause.
(Declaration of Trust, Docket Item 8, Exhibit C, Paragraph 13.) The Fund is entirely supported by employer contributions from some 1,500 contributing employers located in New York, Pennsylvania, Massachusetts, and Canada. There are eight trustees of the Fund, half of whom are selected by contributing employers and the other half by the 15 participating local unions. The Fund serves approximately 25,000 participants and beneficiaries.
For the last 20 years, the trustees of the Fund have periodically required individual employers and local unions to sign a "standard Participation Agreement" or "stipulation" in order to participate or continue to participate in the Fund. This agreement contains rules governing the relationship between the Fund and the unions and employers and restates employer obligations contained in the employer-union-negotiated collective bargaining agreement concerning contribution levels made by employers on behalf of their employees to the Fund.
In September, 1979, the trustees prepared a new Participation Agreement which several Rochester, New York, area employers refused to sign. These employers claimed the Participation Agreement contained provisions which did not appear in prior participation agreements. The defendants maintain that these provisions were not new but had not been explicitly set forth in prior agreements. In any event, these employers and the defendants were unable to resolve their differences, and after these employers refused to sign the Participation Agreement, the defendants refused to accept the employers' pension fund contributions tendered to the Fund. The defendants maintain that without a signed Participation Agreement from an employer and the local union, they have no obligation to accept any employer contributions to the Fund.
Concomitant with this refusal to accept these employers' payments, the Fund also contacted employees of these employers and informed them that because their employers had refused to sign the Participation Agreement, the employees were no longer covered for benefits.
*183 As a result of the Fund's refusal to accept employer contributions without the execution of a Participation Agreement, this action was commenced in September, 1980, by an association of employers, the Building Trades Employers Association, a number of individual Rochester area employers, and an individual employee, John Morse, against the Fund, the trustees of the Fund, and its executive administrator. Plaintiffs seek a declaratory judgment that the defendants' actions in refusing to accept the employers' contributions constituted a breach of the trustees' fiduciary duties under ERISA and an injunction prohibiting the defendants from refusing to accept these contributions. Plaintiffs requested a temporary restraining order allowing employers to tender their contributions to the Fund without executing the Participation Agreement, as well as an order requiring the Fund to accept these contributions and an order preventing the Fund from reducing pension benefits to the plaintiff-employers' employees. This order was granted, and since October 9, 1980, it has been continued by consent of the parties to the present time.
Following the entry of this order, additional controversies between the parties developed. In early 1981, the Fund notified employer Rogers Fuel Corporation that the Fund wished to send an auditor to examine the company's employee and business records. When Rogers Fuel refused to allow the audit, the Fund responded by notifying the company that it was no longer a participating employer entitled to contribute to the Fund. A similar series of events surrounded the Fund's attempts to audit employer Comac Builders in June, 1981. The court directed that the parties should themselves reach a method for determining a satisfactory audit, and if they were unable to reach an agreement, the Fund should proceed by appropriate motion during the pendency of this action (Order of August 13, 1981, Docket Item 38).
In the fall of 1981, plaintiffs and defendants filed cross motions for summary judgment concerning the Fund's requirement of a signed Participation Agreement from the plaintiffs in order to accept pension fund contributions. Both before and after the submission of these motions, plaintiffs made four different applications to hold the defendants in contempt for their failure to abide by the terms of the temporary restraining order. These activities primarily involved the Fund's refusal to accept employers' contributions, the reduction of retired employees' benefits, and Fund letters to plaintiff-employers requiring the execution of the disputed Participation Agreements in order to contribute to the Fund over a period of six months. Hearings were held on these motions, and the court found the individual trustees jointly and severally liable for these activities. The court imposed a fine of $100 per violation; however, this fine was suspended upon the condition that the trustees would take steps to carry out the terms of the court's order (Order of June 25, 1982, Docket Item 91).
After the resolution of the contempt applications, the court sua sponte raised the issue of whether the plaintiff-employers had standing to maintain this action under ERISA and directed that the parties submit additional memoranda addressing this question. On November 30, 1982, the court determined that the plaintiff-employers did not have standing to maintain their claims under ERISA pursuant to 29 U.S.C. § 1132 (Order of November 30, 1982, Docket Item 94). Plaintiff-employers then moved for reargument and reconsideration of this decision. Based upon the determination of the United States Court of Appeals for the Second Circuit that employers are not named in the jurisdictional provisions of ERISA and therefore may not bring suit under the Act, Pressroom Union Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889, 892 (2d Cir.1983), the court reaffirmed its earlier decision (Order of March 15, 1983, Docket Item 115).
The court then requested that the parties examine and consider the status of the remaining plaintiff, John Morse, and directed the parties to submit additional memoranda *184 concerning the cross motions for summary judgment in light of the court's decision concerning the lack of standing of the former plaintiff-employers to bring this action. These additional memoranda have now been received, and the issue is now ready for determination.
The individual plaintiff in this action, John Morse, is a corporate officer of Morse Lumber, Inc., a general lumber supply company located in Rochester, New York. Mr. Morse holds the position of Secretary-Treasurer in the corporation, and although he is a managerial employee and is not a member of the local union or collective bargaining unit, for many years the defendants have permitted individuals other than members of the Teamsters Union to participate in the Fund. In fact, Mr. Morse has been a participant in the defendant Fund since 1965, when his employer, Morse Lumber, first began making contributions to the Fund upon his behalf.
Morse Lumber is a party to a collective bargaining agreement with Teamsters Local 398, and the agreement requires Morse Lumber to contribute to the defendant Fund. Both the union and Morse Lumber signed the Fund's Participation Agreement, but plaintiff's employer deleted and altered several provisions of the Agreement, apparently with the consent of the Union (Docket Item 11). The Fund refused to accept these changes in provisions, and Mr. Morse received a letter from the Fund in 1980 informing him that because his employer refused to sign the Fund's Participation Agreement, he would no longer be eligible to receive future service credits and ultimately larger pension benefits.
Mr. Morse has acquired vested rights in the Fund, as he has 18 years of pension-credited service, and this status entitles him to pension benefits upon retirement. Nevertheless, defendants have argued that Mr. Morse is not a proper party to bring this action, and that Mr. Morse is using his status as an employee of the corporation to assert the claims of his employer.
Yet, defendants readily admit that Mr. Morse is a participant in the Fund (Docket Item 95, p. 6), and it is clear that his expectation of receiving benefits will be affected by the resolution of this action. Further, Mr. Morse states that his status in this action is one of a participant in the defendant Fund and that he is seeking a clarification and declaration of his rights under ERISA (Docket Item 11). Mr. Morse also states that he has never been a signatory in his personal capacity to any of the Fund's Participation Agreements or any other Participation Agreements (Docket Item 11).
Section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that a "participant" or "beneficiary" may bring a civil action "to clarify his rights to future benefits under the terms of the plan." A "participant" is "any employee ... who is or may become eligible to receive a benefit of any type" from the Fund. 29 U.S.C. § 1002(7). As a participant, Mr. Morse seeks a clarification of his right to receive future pension benefits which are directly affected by the Fund's requirement that his employer execute the disputed Participation Agreement, his employer's refusal to sign the Participation Agreement, and the Fund's subsequent determination to refuse to accept his employer's contributions which were tendered to the Fund upon his behalf. Therefore, this court has jurisdiction of this matter pursuant to 29 U.S.C. § 1132(e). See International Association of Bridge, Structural & Ornamental Iron Workers Local 111 v. Douglas, 646 F.2d 1211, 1214 (7th Cir.1981).
As this case has developed, a myriad of issues has been presented to the court. Plaintiff and the former plaintiff-employers have at various times argued that the terms of the Participation Agreement are "arbitrary, capricious, and unconscionable,"[1] and that the defendant-trustees' refusal *185 to accept employer contributions breached the trustees' duties toward not only employers and employees but also to retired employees participating in the Fund. The former plaintiff-employers also raised issues concerning the scope of an audit sought to be conducted by the Fund of Rogers Fuel, and defendants have counterclaimed that former plaintiff-employer Comac Builders allegedly owes certain delinquent contributions to the Fund.
Curiously, in plaintiff's instant motion, he does not present any arguments concerning the disputed terms of the Participation Agreement which his employer signed after altering and deleting several provisions of the Agreement and which the Fund refused to accept in this altered form. Rather, the only issues now presented by the plaintiff in his motion are whether the defendants can terminate the participation of his employer in the Fund for its refusal to sign the Participation Agreement and, under these circumstances, whether the defendants' refusal to accept his employer's contributions was a breach of the defendants' fiduciary obligations (Docket Item 79, p. 6; Docket Item 120, pp. 9-10).
Plaintiff contends that defendants have violated their fiduciary duties in four respects. First, plaintiff contends that the trustees have failed to act "in accordance with the documents and instruments governing the plan ...." 29 U.S.C. § 1104(a)(1)(D). Plaintiff stresses that the Declaration of Trust requires the trustees to "demand, collect, receive and hold Employer contributions ...." (Declaration of Trust, Docket Item 8, Exhibit C, paragraph 2) and that the Declaration of Trust further requires the defendants to "provide pension ... benefits to members of the unions covered ... under collective bargaining agreements between the Union and Employers containing a pension or retirement benefits clause." (Declaration of Trust, Docket Item 8, Exhibit C, paragraph 13).
Next, plaintiff contends that by refusing the tendered employer contributions, the trustees breached their fiduciary duties to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries ...." 29 U.S.C. § 1104(a)(1). Finally, plaintiff claims that defendants' refusal to accept the employer's tendered contributions breaches the "prudent man" standard of care under common law and ERISA. 29 U.S.C. § 1104(a)(1)(B).
In general terms, defendants argue that the Fund has no obligation to accept contributions from employers who are not authorized to participate in the Fund by the trustees. Defendants contend that under Fund rules, an employer does not become a "participating employer" in the Fund until the employer has executed a Fund Participation Agreement. Without the execution of a Participation Agreement, the Fund claims it has no obligation to accept contributions from employers. The Fund further contends that the Participation Agreement is necessary to insure the Administrative and actuarial soundness of the Fund to provide benefits to its participants and beneficiaries.
In determining whether defendants have breached their fiduciary duties, the courts have generally applied an "arbitrary and capricious" standard of review to challenged decisions of pension plan trustees and administrators in order to avoid excessive judicial interference with pension plan administration. Miles v. New York State Teamsters Conference, etc., 698 F.2d 593, 599 (2d Cir.1983). The United States Court of Appeals for the Second Circuit has stated that "when a pension committee is acting within the law its discretionary acts should not be disturbed, absent a showing of bad faith or arbitrariness." Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 915 (2d Cir.1982). Trustees of *186 pension plans may be found to have acted in an arbitrary and capricious manner when
the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous ....
Miles v. New York State Teamsters Conference, etc., 698 F.2d at 599. With this standard in mind, plaintiff's and defendants' contentions may be properly considered.
Concerning plaintiff's contention that the trustees have failed to act in accordance with the documents and instruments governing the plan, 29 U.S.C. § 1104(a)(1)(D), the Trust Agreement and the Plan constitute the "documents and instruments" with which the trustees are required to discharge their duties under this section of ERISA. Winpisinger v. Aurora Corp. of Illinois, 456 F.Supp. 559 (N.D.Ohio 1978). "The authorities are clear that both the powers and obligations of the trustees are determined by the provisions of the trust." Sinai Hospital of Baltimore v. National Benefit Fund, 697 F.2d 562, 567 (4th Cir.1982) (citations omitted).
As plaintiff notes, the Trust Agreement requires the trustees to "demand, collect, receive and hold Employer contributions ...." (Declaration of Trust, Docket Item 8, Exhibit C, paragraph 2.) However, the first paragraph of the Trust Agreement also states that "[t]he Trustees shall have the authority to manage and control the administration and operation of the Fund and Plan." In addition, the trustees are also granted "the power to make rules and regulations not inconsistent with the terms hereof to carry out the provisions hereof." (Declaration of Trust, Docket Item 8, Exhibit C, paragraph 11(i).) Having granted the trustees the authority to manage and control the administration and operation of the Fund and pension plan, as well as the authority to promulgate rules and regulations to carry out its provisions, "neither an employer nor a union, singly or together, can alter the terms of a trust instrument ... unless the power to do so was reserved when the trust was created or properly amended." Sinai Hospital of Baltimore v. National Benefit Fund, 697 F.2d at 567.
Pursuant to this authority found in the Trust Agreement, the pension plan defines "participating employer" as
any person, firm, or corporation having a collective bargaining agreement with the Union which is authorized by the Board of Trustees to participate in the Plan upon appropriate action by such employer acceptable to the Board of Trustees.
(Pension Plan, Docket Item 118, p. 19).
The trustees maintain that an employer's signing a Participation Agreement constitutes "such appropriate action" acceptable to the trustees so as to authorize an employer's participation in the Fund.
In Talarico v. United Furniture Workers Pension Fund A, 479 F.Supp. 1072 (D.Neb.1979), virtually identical language defining a "participating employer" was found in the United Furniture Workers Pension Plan, and the Fund also required employers to sign a participation agreement in order to participate in the Fund. Id. at 1075. In that case, the Fund refused to permit employers to exclude contributions made on behalf of employees under 25 years of age. When one employer, Mastercraft, negotiated a collective bargaining agreement with a local union excluding contributions for employees under age 25, the Fund refused to accept Mastercraft contributions. Id. at 1074. In that case, as here, plaintiffs contended that the collective bargaining agreement was sufficient to allow participation in the Fund.
The court found that this action was not sufficient. Referring to the language of the Plan, the court noted that
the Plan reserves to the trustees of the Fund the power to authorize an employer "to participate in the Plan upon appropriate action by the Employer acceptable to the Board of Trustees." Plaintiffs' contentions *187 would render such language a nullity.
Id. at 1080.
Plaintiff argues that the recent Supreme Court decision, National Labor Relations Board v. Amax Coal Co., 453 U.S. 322, 336, 101 S.Ct. 2789, 2797, 69 L.Ed.2d 672 (1981), requires the defendants to accept employer contributions made pursuant to a collective bargaining agreement, and he contends that this acceptance is a statutory requirement. The central issue in Amax was whether the employer-appointed trustee of a benefit trust fund was a management representative within the meaning of 29 U.S.C. § 158(b)(1)(B) of the Labor Management Relations Act. The Court held that a trustee was not a management representative but rather a fiduciary who owed complete loyalty to the trust and its beneficiaries. The Court stated that "ERISA vests the `exclusive authority and discretion to manage and control the assets of the plan' in the trustees alone, and not the employer or the union. 29 U.S.C. § 1103(a)." Id. at 333, 101 S.Ct. at 2796.
Thus, the documents and instruments governing the plan clearly grant the defendants the authority to authorize employers to contribute to the Plan. The trustees have determined that this may be accomplished by an employer executing a Participation Agreement. The refusal of plaintiff's employer, Morse Lumber, to sign the Participation Agreement does not constitute "such appropriate action" acceptable to the Board of Trustees for the Board to authorize Morse Lumber to participate in the Fund.
Plaintiffs' contention that the collective bargaining agreement alone is sufficient to authorize participation in the Fund would, as noted in Talarico v. United Furniture Workers Pension Fund A, 479 F.Supp. at 1080, render this portion of the Plan a "nullity," and the exclusive authority to manage and control the assets of the plan lies with the trustees, not plaintiff's employer. National Labor Relations Board v. Amax Coal Co., 453 U.S. at 333, 101 S.Ct. at 2796; 29 U.S.C. § 1103(a).
Accordingly, the defendants' trustees have acted in accordance with the documents and instruments of the Plan, 29 U.S.C. § 1104(a)(1)(D), and not in an arbitrary and capricious manner when they refused to accept the contributions of plaintiff's employer without first receiving a Participation Agreement from plaintiff's employer.
Plaintiff also argues that by refusing his employer's tendered contributions, the defendants violated their fiduciary duties to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), as well as the trustees' duties to act "for the exclusive purpose of providing benefits to participants and their beneficiaries ...." 29 U.S.C. § 1104(a)(1)(A)(i). Plaintiff's position is essentially that the trustees have an obligation to accept whatever contributions are tendered by his employer to enlarge fund assets in order to provide benefits for participants and beneficiaries and that by refusing to accept these tendered contributions, the defendant trustees have breached their fiduciary duties under these statutory provisions.
As plaintiff notes, decisional law interpreting these two closely related provisions is sparse; however, in several instances, courts have recognized the authority of pension fund trustees to refuse pension contributions tendered by employers when employers have refused to comply with Fund rules and regulations. Central States, Southeast and Southwest Areas Pension Fund v. Chicago-St. Louis Transport Co., 535 F.Supp. 476, 481 (D.Ill.1982); Winpisinger v. Aurora Corp. of Illinois, 456 F.Supp. 559, 575 (N.D.Ohio 1978).
In carrying out their obligations under section 1104, the trustees must serve all the participants in the Fund, Talarico v. United Furniture Workers Pension Fund A, 479 F.Supp. at 1081. In this case, the Fund includes some 25,000 participants, on whose behalf approximately 1,500 employers make contributions. While it is clear that employers and unions determine the amount of contributions to the Fund, National *188 Labor Relations Board v. Amax Coal Co., 453 U.S. 322, 336, 101 S.Ct. 2789, 2797, 69 L.Ed.2d 672 (1981), the trustees are charged with the obligation to specify the basis upon which payments are made to and from the plan. 29 U.S.C. § 1102(b)(4).
In this case, the Fund does not receive copies of the collective bargaining agreement from the employer or the Union. Rather, the Participation Agreement is the only document received by the Fund, and it is the only document upon which the Fund relies as a basis for establishing employer participation in the Fund. The Fund contends that the degree of specificity concerning pension fund contributions found in collective bargaining agreements varies greatly,[2] and the defendants argue persuasively that the Fund must understand both the basis for employer participation as well as the amount of the employer's contribution levels in order to establish an actuarily sound pension fund. Without understanding both the basis of participation and the levels of contribution, the Fund maintains that it would be unable to determine participant rules of eligibility as well as the level of benefits available to participating members. (Affidavit of Al Sgaglione, Executive Administrator of the Fund, Docket Item 6.)
The trustees further contend that in the past, various collective bargaining agreements entered into between employers and local unions contained provisions which adversely affected the interests of Fund participants, and these provisions had an adverse effect upon the Fund as a whole. While it is clear that the trustees are not bound by all the terms of a collective bargaining agreement, Sinai Hospital of Baltimore v. National Benefit Fund, 697 F.2d at 568, in order to avoid inconsistencies in collective bargaining agreements which adversely affect their management and control of the Fund, the trustees have chosen to rely upon the execution of a Participation Agreement.
The defendants also state that they would be unable to manage the Fund if each employer and each union decided in the collective bargaining agreement "what they will do or will not do" concerning their participation in the Fund (Affidavit of Al Sgaglione, Docket Item 6, p. 5). By establishing a uniform basis by which employer contributions may be received by the Fund, it seems clear that the Participation Agreement assists in maintaining the actuarial and administrative soundness of the Fund's ability to pay benefits to participants and their beneficiaries.[3]
As viewed under these circumstances, the requirement that an employer execute a Participation Agreement as a precondition to the Fund's acceptance of an employer's contributions is both in the interest of the participants and the beneficiaries of the Fund and furthers the exclusive purpose of the Fund to provide benefits to these individuals. Under the arbitrary and capricious standard by which the trustees' actions must be evaluated, the defendants' decision not to accept contributions from an employer who refused to execute a Participation Agreement seems well within their discretionary authority and consistent with their duties and obligations mandated by ERISA. Plaintiff is correct in his argument that the pool of assets available to the Fund may be lessened by *189 the Fund's decision not to accept contributions from non-participating employers. However, "[a] multi-employer pension plan ... cannot be forced to jeopardize [the] actuarial soundness by violating a policy essential to that soundness to accommodate the desires of a single employer," Talarico v. United Furniture Workers Pension Fund A, 479 F.Supp. at 1082, or a group of employers who oppose the uniform basis established by the trustees for participation in the Fund.
Plaintiff further contends that defendants have breached the "prudent man" standards, as set forth in 29 U.S.C. § 1104(a)(1)(B), which imposes upon ERISA fiduciaries duties customarily imposed upon fiduciaries at common law. Eaves v. Penn, 587 F.2d 453, 457, 462-63 (10th Cir. 1978). Plaintiff claims that the defendants have a duty to enforce claims on behalf of the trust and that the trustee's refusal of his employer's contributions was a breach of this fiduciary obligation. "There is no firmer principle in the common law of trusts than that requiring the trustees to act only in accordance with the terms of the trust," Sinai Hospital of Baltimore v. National Benefit Fund, 697 F.2d at 566, and plaintiff's argument presupposes that the defendants have authorized plaintiff's employer to participate in the Plan. As previously explained, the Trust Agreement and the Pension Plan grant the trustees the authority to permit employers to participate in the Plan "upon appropriate action by such employer acceptable to the Board of Trustees." (Pension Plan, Docket 118, p. 19.) Without such appropriate action by the employerin this case, the execution of a Participation Agreementthe trustees have no obligation to accept contributions from plaintiff's employer. Thus, until plaintiff's employer becomes a "participating employer" in the Plan and the Fund, the trustees will have undertaken no duty to enforce claims on behalf of the Trust and accept contributions made to the Fund by his employer upon plaintiff's behalf.
In summation, there may well be provisions contained in the Fund's Participation Agreement which are "arbitrary, capricious, and unconscionable" to plaintiff's employer. However, those issues have not been presented to the court for review, and the court declines to speculate about these provisions without the filing of appropriate motions seeking court review of these provisions. Based upon the foregoing reasons, however, plaintiff's motion for summary judgment must be denied and defendants' motion granted, to the extent that the defendants may require a signed Participation Agreement from employers and unions in order for employers to participate in the Fund and Plan and in order for the defendant trustees to accept employer contributions made on behalf of employees of participating employers in the Fund and Plan.
So ordered.
NOTES
[1] Plaintiff-employers contended that the Participation Agreement imposed what was tantamount to a "blank confession of judgment," that it purports to terminate the Fund's liability for ERISA pension benefits during a period of delinquency in contributing to the Fund; that it purports to place the responsibility for ERISA pension benefits upon an employer who has been expelled from participation in the Fund, and that the Participation Agreement attempts to circumvent any no-strike clause or arbitration clauses employers may have bargained for in the collective bargaining process. (Docket Item 45, pp. 8-10.)
[2] Indeed, the collective bargaining agreement between plaintiff's employer and Local 398 concerning employee pensions states only "See Attached Stipulation." (Docket Item 53, Exhibit B, p. 17.)
[3] Defendants have also contended that plaintiff, as a non-bargaining unit employee of Morse Lumber, would no longer be permitted to participate in the Fund. Defendants argue that without the execution of a Participation Agreement between the Fund and the employer and local union, there is no mechanism for plaintiff to participate in the Fund because plaintiff is not a member of the collective bargaining unit for whom the employer and the local union negotiate the amount of contributions to be paid by employers on behalf of their employees to the Fund. Defendants conclude that if employers are allowed to contribute to the Fund based solely upon the collective bargaining agreement, plaintiff and all managerial employees of participating employers would be disqualified from participating in the Fund and the Plan.