TRUCKMEN'S & WAREHOUSEMEN'S ASSOCIATION OF ROCHESTER; Boulter Carting Co., Inc.; George M. Clancy Carting Co., Inc.; Vogel Van and Storage of Rochester, Inc.; Service Storage Incorporated; B.G. Costich & Sons, Inc.; East End Moving and Storage, Inc.; Gottry Corporation; Roch-

ester Storage Warehouses, Inc.; and Michael Clancy, Individually and as a participant in, and beneficiary of, the New York State Teamsters Conference Pension and Retirement Fund, Plaintiffs,

v.

The NEW YORK STATE CONFERENCE PENSION AND RETIREMENT FUND; Irving Wisch, Kepler Vincent, T. Edward Nolan, Rocco F. De Perno, Victor Mousseau, Paul E. Bush, and Jack Canzoneri, as Trustees of the New York State Teamsters Conference Pension and Retirement Fund; and Al Sgaglione, Executive Administrator of the New York State Conference Pension and Retirement Fund, Defendants.

John W. MORSE, Individually and as a participant in, and a beneficiary of, the New York State Teamsters Conference Pension and Retirement Fund, Plaintiff,

v.

The NEW YORK STATE TEAMSTER CONFERENCE PENSION AND RETIREMENT FUND; T. Edward Nolan, Rocco F. De Perno, Curtis Gunderson, Paul E. Bush, and Richard Muller, as Trustees of the New York Teamsters Conference Pension and Retirement Fund; and Al Sgaglione, Executive Administrator of the New York State Teamsters Conference Pension and Retirement Fund, Defendants.

Nos. CIV–81–1110C, CIV–85–1080C.

United States District Court, W.D. New York.

Nov. 30, 1990.

Harris, Beach, Wilcox, Rubin & Levey (Douglas A. Foss, of counsel) and Woods, Oviatt, Gilman & Sturman (Donald W. O'Brien, Jr., of counsel), Rochester, N.Y., for plaintiffs.

Peter P. Paravati, Bridgewaters, N.Y., for defendants.

## BACKGROUND

CURTIN, District Judge.

These cases stem from a dispute over a 1979 stipulation form issued by the New York State Teamsters Conference Pension and Retirement Fund ("Fund"). The trustees of the Fund ("Trustees") have required employers to sign this form as a prerequisite to participation in the Fund. As this court held in *Morse v. New York State Teamsters Conference Pension and Retirement Fund*, 580 F.Supp. 180, 185–86 (W.D.N.Y.1983) (Curtin, J.), *aff'd*, 761 F.2d 115 (2d Cir.1985), this requirement was not an arbitrary and capricious exercise of the Trustees' authority. The Second Circuit affirmed, noting that

so long as the trustees act solely in the proper interests of the Fund and its participant-employees and do not abuse their powers by arbitrarily intermeddling in the private management and labor negotiations of the sponsoring employers, courts should refrain from faulting their actions.

*New York State Teamsters*, 761 F.2d at 117. This court's holding in *New York State Teamsters*, however, was limited. It

dealt solely with the trustees' insistence upon the execution of a participation agreement by sponsoring employers and [this court] was not asked to consider the capriciousness *vel non* of any of the agreement's provisions....

*Id.* The cases now before the court specifically allege that provisions in the 1979 stipulation form are arbitrary and capricious.

The court is presented with opposing motions for summary judgment. Both sides agree that the issue before the court is whether the actions of the Trustees in drawing up the 1979 form were arbitrary and capricious. As this court noted in *New York State Teamsters*, 580 F.Supp. at 185–86, *aff'd*, 761 F.2d 115, "[t]rustees of pension plans may be found to have acted in an arbitrary and capricious manner when

the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous....

(quoting *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983)). Similarly, as noted above, trustees may be found to "abuse their powers by arbitrarily intermeddling in the private management and labor negotiations of the sponsoring employers...." *New York State Teamsters*, 761 F.2d at 117. The task for this court is to assess each of the clauses at issue to determine whether the Trustees have overstepped their bounds.

## DISCUSSION

### I. STANDING

■ As an initial matter, defendants raise the question of the parties' standing

to proceed. In *Truckmen's & Warehouse-men's Ass'n of Rochester v. New York State Conference Pension and Retirement Fund*, CIV–31–1110C, plaintiffs include the Truckmen's & Warehousemen's Association of Rochester (an association of employers), nine corporations, and Michael Clancy, an alleged participant in, and beneficiary of the Fund.[1] In *Morse v. New York State Conference Pension and Retirement Fund*, CIV–85–1080C, only John Morse, an alleged participant in, and beneficiary of the Fund remains as plaintiff.

As this court made clear in *New York State Teamsters*, 580 F.Supp. at 183, *aff'd*, 761 F.2d at 116, employers lack standing to sue under the limited jurisdictional scope of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1132. This holding has repeatedly been reaffirmed by the Second Circuit. *See Pressroom Unions Printers League Income Sec. Fund*, 700 F.2d 889, 892–94 (2d Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *Tuvia Convalescent Center, Inc. v. National Union of Hosp. & Health Care Employees*, 717 F.2d 726, 729–30 (2d Cir. 1983). Thus, the nine employers and the association of employers named as plaintiffs in *Truckmen's* lack standing to sue.

■ Defendants' argue further, however, that the individual plaintiffs are also "employers" within ERISA, because they are persons "acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5) (defining "employer" under ERISA). As "employers," defendants argue, these plaintiffs "cannot defeat the intent of Section 1132 and have the duel [sic] status of an employer/participant to obtain standing." Item 71, at 15.[2]

The difficulty with defendants' argument is that it is too broad. Cases cited in support of this defendants' last proposition do hold that a *sole proprietor* may not enjoy the dual status of employer and employee to gain standing under ERISA. *See Giardono v. Jones*, 867 F.2d 409, 411–13

(7th Cir.1989); *Peckham v. Board of Trustees of the Int'l Bhd. of Painters and Allied Trades Union*, 653 F.2d 424, 427 (10th Cir.1981). Moreover, an *"independent contractor's* decision to independently subscribe to a policy shared by the company with which it has a contractual relationship does not transform the contractor into an employee for purposes of ERISA." *HCA Health Serv. of the Midwest, Inc. v. Brown*, 1988 WL 71219 (N.D.Ill.1988) (emphasis added).

These cases do not, however, preclude standing for either individual in these cases. This court's prior decision in *New York State Teamsters*, specifically recognized the standing of Mr. Morse.

> [D]efendants readily admit that Mr. Morse is a participant in the Fund, and it is clear that his expectation of receiving benefits will be affected by the resolution of this action. Further, Mr. Morse states that his status in this action is one of a participant in the defendant Fund and that he is seeking a clarification and declaration of his rights under ERISA. Mr. Morse also states that he has never been a signatory in his personal capacity to any of the Fund's Participation Agreements or any other Participation Agreements.

580 F.Supp. at 184, (citations omitted). Moreover, several other courts have recognized standing of "employers" to sue as participants. *See Peckham v. Board of Trustees of the Int'l Bhd. of Painters and Allied Trades Union*, 724 F.2d 100, 100–01 (10th Cir.1983) (*"Peckham II"*) ("We need not decide whether an employer, *qua* employer, may bring an action to enforce a return of contributions mistakenly paid.... Plaintiffs Peckham and Woolum were named participants in the trust; they brought suit to recover pension rights in their capacities as participants."); *Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund*, 753 F.2d 744, 748 (9th Cir.1985) (agreeing with the

---

1. Mr. Clancy is also apparently President of George M. Clancy Carting Co., Inc., one of the employer-plaintiffs in this suit.

2. All Item numbers, unless otherwise indicated, are filed in the *Truckmen's* case.

result in *Peckham II,* but leaving open the question whether plaintiffs were "participants"); *R.M. Bowler Contract Hauling Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 547 F.Supp. 783, 784 (S.D.Ill.1982) (noting "it is obvious that R.W. Bowler, as an individual, has standing as an employee-beneficiary under the Act."). Thus both Mr. Morse and Mr. Clancy have standing to proceed.

## II. THE 1979 STIPULATION

### A. *Paragraph 1(b)*

Plaintiffs object to two clauses found in ¶ 1(b) of the 1979 stipulation. *See* Item 77, Ex. 3. The first clause requires employers to make contributions to the Fund for *all* employees doing the same work as bargaining unit employees, whether or not such employees are members of the union, and whether they work full time, part time, casually or seasonally. The second clause says that

> in the event there is any agreement between employer and Union that is contrary to or inconsistent with the terms of this Stipulation or the rules of the Pension Fund, such inconsistent provisions shall be null and void and superseded by the terms of this Stipulation and/or the rules of the Fund.

*Id.*

The controversy over the first of these clauses did not begin with the present suit. Plaintiffs note that prior to 1977, collective bargaining agreements between local Teamsters' unions and local employers required pension contributions only on behalf of union members. *See B.G. Costich & Sons, Inc. v. N.L.R.B.,* 613 F.2d 450, 451–52 (2d Cir.1980). In 1977, although the collective bargaining agreements did not change, the Fund claimed that, under the stipulation in effect at that time, employers owed contributions on non-union employees doing bargaining unit work. *See Boulter Carting Co. v. DePerno,* No. 925/78, slip op. at 2 (N.Y. Sup.Ct. May 9, 1980) (Wagner, J.) (Item 1, Ex. K). Various employers brought suit against the Fund to bar this requirement. Judge Wagner of the New York Supreme Court granted the employers summary judgment, "declaring that based upon the General Trucking Agreement and stipulation [in place at that time] they were obligated to make pension contributions only on behalf of employees who are members of [the union]." *Id.* (citing decision of Aug. 2, 1978). The Appellate Division, Fourth Department, however, found the language of the stipulation ambiguous and remanded for a hearing to clarify its meaning. *Boulter Carting Co. v. DePerno,* 72 A.D.2d 939, 421 N.Y.S.2d 483, 483–84 (1979). On remand, Judge Wagner again concluded that the stipulation, which required employers "to contribute for any and all of [their] regular full-time and any and all other employees covered by this Agreement," *Boulter Carting,* No. 925/78, slip op. at 16, "looked to the collective bargaining agreement to identify those employees for whom the plaintiff-employers had to make pension contributions in order to participate in the fund." *Id.* at 17.

In 1979, the Fund amended the stipulation to remove the ambiguity. Paragraph 1(b) was substituted for the above-quoted language to make clear the Fund's requirement that employers contribute on behalf of non-union and casual employees. Shortly thereafter, this suit was commenced. The question for the court is whether the Trustees' adoption of this new language was arbitrary and capricious.

This precise issue was litigated with respect to this Fund before Judge McAvoy in the Northern District of New York in 1987. *New York State Teamsters Conference Pension & Retirement Fund v. S.M. Flickinger Co.,* 1987 WL 8442, No. 85–CV–170 (N.D.N.Y. March 16, 1987). As Judge McAvoy clearly stated:

> The only issue before this court is whether the Funds' requirement that Flickinger make contributions on behalf of seasonal and casual employees despite the absence of such a mandate in its collective bargaining agreement is arbitrary and capricious.

*Id.* at *3.[3] To decide this issue, Judge McAvoy asked the following questions:

(1) whether the Fund's interpretation of the stipulation executed with Flickinger which requires that it make contributions on behalf of seasonal and casual employees is rational, (2) whether the Fund's adoption of the rule requiring such contributions is authorized by the terms of the trust indenture and plan, (3) whether the foregoing rule is consistent with the plan's purpose of providing benefits to all employees covered therefor by the collective bargaining agreements, and (4) whether the rule represents an arbitrary intermeddling in the collective bargaining process.

*Id.* at *3–4. He noted that the Second Circuit, reviewing the Fund's requirement in the context of an unfair labor practice charge, expressly left open the question whether these trustees have the right to adopt pension coverage which modifies the terms of a collective bargaining agreement. *Id.* at *4 (discussing *N.L.R.B. v. Truck Drivers Local Union No. 449*, 728 F.2d 80, 85 (2d Cir.1984)).[4]

Proceeding to discuss each question, Judge McAvoy first concluded that the Fund had not misinterpreted its rule requiring contributions on behalf of non-union seasonal and casual employees. *S.W. Flickinger*, 1987 WL 8442, at *5. This point is not contested in the present cases.

The court next evaluated whether the Fund's rule was authorized under the Fund's trust indenture. The preamble to the trust provides:

Whereas, Local Unions ... of the International Brotherhood of Teamsters ... has [sic] heretofore executed and will from time to time execute *collective bargaining agreements* with Employers ... engaged in the trucking industry and in allied industries *which,* among other things, provide and will continue to *provide for the payment by such Employers to the ... Fund, ... periodically, a*

sum *of money more nearly described in such collective bargaining agreements* between said Contributing Employers and the Union; and

Whereas, the sums payable to the Fund as aforesaid ... are for the purposes of providing pensions or retirement benefits *to the employees covered therefor under collective bargaining agreements* or supplements thereto, between the Union and contributing Employers;

Now, therefore, in consideration of the premises, the Trustees declare that they will receive and hold the Employer contributions and other money or property which may come into their hands as Trustees hereunder ... with the following powers and duties and for the following uses, purposes and trusts, and none other....

Item 77, Ex. 16, at 1 (emphasis added). Other provisions of the trust permit the trustees to apply the trust proceeds

To pay or provide for the payment of pensions ... to members of the Union covered for pension or retirement benefits under collective bargaining agreements ... or to other persons who may properly come under the Pension Plan, in such amounts and upon such conditions as the Trustees shall from time to time determine."

*Id.* at ¶ 4(b). Further, the trustees have the power to "demand, collect, receive and hold Employer contributions and take such steps ... as may be necessary or desirable to effectuate the collection of such Employer contributions." *Id.* at ¶ 2. Judge McAvoy, interpreting these provisions, reasoned that:

Indisputably, the *amount* of an employer's contribution [per hour, per employee] is set by the terms of the collective bargaining agreement. It does not necessarily follow, however, that the plan likewise incorporates the collective bargaining agreement's definition of the identity of those for whom contributions

---

3. Citations are to star notations enumerated in brackets—[* —]—found in Westlaw.

4. The Second Circuit concluded that, because the Fund was not an agent of the union, no unfair labor practice was involved. *Truck Drivers,* 728 F.2d at 89.

must be made. Indeed, the plan itself is silent in this respect.

*Id.* at \*5 (emphasis added). Given this gap in the trust indenture, Judge McAvoy concluded that the Fund's rule was permissible in light of its authority to administer the Fund. *Id.* This court agrees with this interpretation.

Judge McAvoy then considered whether the Fund's rule implemented the Fund's objective to provide pension benefits for employees covered under collective bargaining agreements. *See supra* (second paragraph of trust preamble; ¶ 4(b)). The court found the rule "reasonable and necessary to ensure the availability of funds for the payment of benefits to covered employees...." *Id.* at \*5. Again, this court agrees.

Under the common law, trustees "bear[ ] an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties." *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). *See also* RESTATEMENT (SECOND) OF TRUSTS § 170(1) (1959); IIA A. Scott & W. Fratcher, THE LAW OF TRUSTS § 170 (1987). ERISA has essentially codified this duty of loyalty for pension fund trustees. *Amax Coal*, 453 U.S. at 332, 101 S.Ct. at 2795–96 (citing 29 U.S.C. § 1104(a)(1)).

The Fund's rule benefits covered employees in two important ways. First, the rule enables employees, who might otherwise not accumulate enough service credit to become "vested" under the plan, to pick up valuable service time from their first hours on the job. The Fund counts all hours for which contributions are made toward an employee's vesting period. *See* Item 72, ¶ 4, 5. Under the Fund's rule, casual employees who move from employer to employer will be fully credited for their time worked. Second, the rule increases the pension benefits for covered employees. Once an employee becomes vested, the Fund determines that person's pension benefits based on a percentage of all contributions made on their behalf. *See* Item 72, ¶ 5. By requiring payment from an employee's first hour of work, the Fund's rule necessarily increases that employee's ultimate pension benefits. Defendants have listed, by example, several employees who have been helped by this rule. *See* Item 72, ¶ 3 & Ex. A.

This rule helps the Fund too, because it requires employers to contribute on behalf of many employees who may never become vested. If an employee is not vested, the Fund is not obligated to pay out pension benefits. This additional money stays with the Fund to increase benefits for remaining beneficiaries.

Thus, the Fund's rule clearly furthers "the purpose of providing pension or retirement benefits to the employees covered therefor under collective bargaining agreements." Item 77, Ex. 16, at 1. It neither enlarges the class of people who are specified to receive pension benefits under the collective bargaining agreements, nor does it increase the per-hour amount that must be contributed for these individuals. As such it is not arbitrary and capricious.

Finally, Judge McAvoy considered whether the Fund abused its authority by "arbitrarily intermeddling in labor-management negotiations." *S.W. Flickinger*, 1987 WL 8442, \*6 (quoting *New York State Teamsters*, 761 F.2d at 117). He concluded that it did not. *Id.* at \*6–8. Given the trustees' authority under the trust instrument, the benefits of the Fund's rule to employees who receive pension coverage, and the financial stability this rule provides to the Fund, this court agrees "that the trustees' decision requiring payments on behalf of all of defendant's employees is not arbitrary and capricious or an abuse of their discretion." *Id.* at \*8. To hold otherwise would unnecessarily disrupt the Fund, and would impermissibly jeopardize the Fund's "soundness by violating a policy essential to that soundness to accommodate the desires of a single employer." *Talarico v. United Furniture Workers Pension Fund A*, 479 F.Supp. 1072, 1082 (D.Neb. 1979).

■ Nor is the second clause of ¶ 1(b), quoted above, arbitrary or capricious. A Fund may adopt rules that conflict with

collective bargaining agreements, as long as these rules are not arbitrary and capricious. *Cf. New York State Teamsters,* 761 F.2d at 117. Trustees must follow the terms of the trust, not collective bargaining agreements. *Sinai Hosp. of Baltimore v. National Benefit Fund for Hosp. & Health Care Employees,* 697 F.2d 562, 566 (4th Cir.1982). The Fund is not a party to any collective bargaining agreement. *See Talarico,* 479 F.Supp. at 1079. It is a wholly independent body. *Id.* "As a separate entity, the Fund is not bound by agreements entered into by local affiliates of the [union]." *Id. See also Toensing v. Brown,* 528 F.2d 69, 72 (9th Cir.1975). Therefore, the trust provisions are to govern when in conflict with contrary provisions in a collective bargaining agreement. *Sinai Hospital,* 697 F.2d at 566–67; *Gainey v. Vemo,* 627 F.Supp. 408, 411–12 (W.D.Wash.1986).

### B. *Paragraph 1(a)*

■ Plaintiffs also object to the requirement that the employer is "bound by all the rules and regulations of the Fund *now and/or hereinafter adopted* by the Board of Trustees of the Pension Fund." Item 77, Ex. 16, ¶ 1(a) (emphasis added).

Plaintiffs' argument is twofold. First, federal courts have recognized the right of trustees to implement administrative rules governing the Fund as long as they are not arbitrary and capricious. *See, e.g., New York State Teamsters,* 580 F.Supp. at 185–86, *aff'd,* 761 F.2d 115. Plaintiffs argue that this grants Trustees all the authority they need to adopt new rules, thus making the provision in the stipulation unnecessary, arbitrary and capricious. Second, plaintiffs point out there has been no practical need for this provision. It has only been used once, they claim, and this rule was subsequently revoked.

Plaintiffs' arguments are without merit. The Trustees by their own admission are unable lawfully to make any rule that is arbitrary and capricious. This court is confident that this restriction will keep the Fund's rules within appropriate bounds.

### C. *Paragraph 2*

Plaintiffs object to several aspects of paragraph 2. The paragraph provides:

Failure on the part of the employer to contribute on any of his employees as specified herein, shall make the employer liable for all employee benefit claims which are incurred during the period of delinquency, damages, reimbursement to the Fund for the Fund's attorneys' fees, auditors' fees, court costs, disbursements and expenses incurred by the Fund in recovering the above. In addition the employer must pay all arrears due the Fund together with liquidated damages in the sum of ten percent (10%) of the amount owed to compensate for additional administrative expenses caused by the delinquency.... The late payment of arrears by the employer shall not in any way relieve him from the obligations set forth above. In addition when the employer is notified in writing by the Fund office that he is delinquent and is told to pay whatever is involved, he must do so immediately and after payment he may appeal to the Board of Trustees for reimbursement, whose decision shall be final and binding. In the event of failure of the employer to comply with this final decision, then the employer and all his employees shall cease to participate in this Fund, and the employer shall be responsible for all the benefits and all other charges specified herein.

Item 77, Ex. 3, ¶ 2. Plaintiffs list three objections to this language:

(1) it purports to render employers liable for pension benefits during periods of delinquency, (2) it sets forth requirements governing review of claimed delinquencies, and (3) it provides that the failure of an employer to abide by the trustees' determination renders the employer liable for its retired employees' benefits and terminates the employer's further participation in the Fund.

Item 68, at 24.

Paragraph 2, plaintiffs argue, contrasts with the Internal Revenue Service's ("IRS") position that the Fund must grant an employee both eligibility credits and

benefits if the employer is obligated to contribute for that employee's time worked, whether or not an employer actually makes a contribution to the Fund for that period. Defendants do not quarrel with the IRS' position. *See* Item 77, Ex. 7, ¶ 4(f); Item 74, at 83–84; Item 71, at 9. *See also S.W. Flickinger*, 1987 WL 8442 (noting "ERISA requires funds to credit an employee with service toward the vesting of his benefits even where the employer never remitted corresponding contributions.") (citing 29 U.S.C. §§ 1052(a)(3)(A), (C), 1053(b)(2)).

Plaintiffs further allege that defendants have stipulated the Fund will not turn away contributions from employers and employers will not have responsibility for payment of pension benefits to vested beneficiaries. *See* Item 68, at 25–26. Defendants have not conceded these points. *See* Item 71, at 7, 9.

Plaintiffs objections and allegations with respect to paragraph 2 are without merit. As this court held in *New York State Teamsters*, 580 F.Supp. at 185–87, *aff'd* 761 F.2d 115, it is not arbitrary or capricious for the Fund to require an employer to sign a stipulation form as a prerequisite to participation in the Fund. Moreover, under the trust indenture, the Trustees have the power to

> demand, collect, receive and hold Employer contributions *and take such steps,* including the institution and prosecution of or in the intervention in any proceeding at law, in equity or in bankruptcy, or in an assignment for the benefit of creditors, *as may be necessary to effectuate the collection of such Employer Contributions.*

Item 77, Ex. 16, ¶ 2 (emphasis added). The court concludes that paragraph 2 of the 1979 stipulation is an entirely permissible set of rules designed to force delinquent employers to make the contributions required of them under the applicable collective bargaining agreement.

■ Plaintiffs object that paragraph 2 renders employers liable for pension benefits during periods of delinquency. Under the trust indenture, "receipt given by the Trustees for any monies or other properties received by them shall effectively discharge the person or persons paying or transferring the same...." Item 42, Ex. 16, ¶ 12(b). This paragraph relieves employers of liability for pension benefits to the extent they have properly paid therefor under the collective bargaining agreement. Moreover, the Fund has admitted it is liable to pay employees pension benefits for which an employer was obligated to pay under the collective bargaining agreement, even if that employer did not pay the Fund. *See supra.* But neither of these rules relieve employers of liability for these same pension benefits if they have failed to make their required payments to the Fund. A rule holding the employer liable to the Fund for such benefit claims is certainly not arbitrary and capricious.

■ Nor is it arbitrary and capricious for the Fund to terminate employers who fail to make their required contributions. Indeed, it is hard to imagine how a Fund could operate any other way given its liability to employees upon their retirement. Compliance with Fund rules simply must be allowed to control participation in the Fund. *See New York State Teamsters*, 580 F.Supp. at 186–87, *aff'd* 761 F.2d 115; *N.L.R.B. v. Amax Coal Co.*, 453 U.S. at 333, 101 S.Ct. at 2796; *Sinai Hospital*, 697 F.2d at 567; *Gainey v. Vemo*, 627 F.Supp. at 411–12; *Talarico*, 479 F.Supp. at 1080; 29 U.S.C. § 1103(a).

■ Finally, it is not arbitrary and capricious for the Board of Trustees decisions on appeal to be "final and binding." Item 42, Ex. 16, ¶ 2. By law, such decisions may not be themselves arbitrary and capricious. *New York State Teamsters*, 580 F.Supp. at 186–87, *aff'd* 761 F.2d 115.

### D. *Strike Clause, Paragraphs 2 and 3*

■ Plaintiffs oppose clauses found in paragraphs 2 and 3 which permit the union to strike in the event an employer is delinquent in his contributions. If the union does strike, under these clauses: (1) the union shall not be bound by an arbitration or no strike clause in its collective bargain-

ing agreement, and (2) the employer shall be liable to the employees for all time lost during such stoppage, and to the Fund for all contributions due. Item 42, Ex. 16, ¶¶ 2, 3.

Plaintiffs note that this clause has never been used. According to testimony by Al Sgaglione, Executive Administrator of the Fund, since he began working for the Fund in 1980, there has never been a discussion among the Trustees concerning a need to use this clause. Item 74, at 76. The only time it was mentioned was in 1989, when the Fund's attorney apparently recommended removing the provision from the Fund's stipulation form. *Id.* Plaintiffs claim this clause is unnecessary as federal law grants the trustees ample enforcement authority without it.

Defendants counter that this clause gives the Fund considerable leverage in collecting contributions from employers. This threat alone, even if never used, may induce some employers to come forward with delinquent employee contributions, defendants argue.

The court finds this clause to be outside the scope of the Trustees authority under the trust indenture, and thus arbitrary and capricious. *See New York State Teamsters,* 580 F.Supp. at 186–87, *aff'd* 761 F.2d 115. Under previously quoted language, the Trustees "shall have the power to demand, collect, receive and hold Employer contributions and take such steps ... as may be necessary or desirable to effectuate the collection of such Employer contributions." Item 77, Ex. 16, ¶ 2. This language grants the Trustees the power to themselves take whatever steps may be necessary to collect from delinquent employers. It does not, however, grant the Trustees the power to *authorize others* to take coercive actions against such employers in violation of their collective bargaining agreements with these same employers.[5] As Mr. Sgaglione himself admitted

I have to be honest with you. In the ten years [I have worked for the Fund], I

don't know what [the strike clause] means. It doesn't really have anything to do with the Fund, or the Fund doesn't do anything to influence or encourage or get involved in a labor bargaining dispute.

Item 74, at 77.

### E. *Paragraph 4*

 Plaintiffs object to the breadth of paragraph 4, which allegedly permits the Fund to "at any time check any and all records of the signing employer." Item 68, at 30.

Paragraph 4 cannot be read so broadly. Paragraph 4 provides, in part, that the Fund "may at any time check the *payroll records* of any and all employees of the employer covered by this Stipulation...." Item 77, Ex. 3, ¶ 4 (emphasis added). This language is clearly within the permissible limits set by the Supreme Court. *See Central States, Southeast and Southwest Areas Pension Fund v. Chicago–St. Louis Transp. Co.,* 472 U.S. 559, 565–74, 105 S.Ct. 2833, 2837–42, 86 L.Ed.2d 447 (1985). In *Central States,* the Supreme Court upheld the right of fund trustees to conduct field audits to check the payroll records of not-concededly-covered employees. Such authority was not in conflict with ERISA's goal to provide trustees with mechanisms to identify all the beneficiaries of a fund so they may be aware of their status and rights under the trust's terms. *Id.* 472 U.S. at 569–74, 105 S.Ct. at 2839–42. Paragraph 4's scope does not exceed the clause reviewed in *Central States,* and is therefore not arbitrary and capricious.

### F. *Paragraphs 5 and 8*

Plaintiffs object to paragraphs 5 and 8 of the 1979 stipulation, which together suggest that an employer who fails to make contributions on all its employees shall become liable to those employees for their pensions, while the Fund shall not be liable.

---

**5.** Of course, this conclusion does not preclude unions from striking to force employers to contribute to a multi-employer pension plan. *See*

*N.L.R.B. v. Amax Coal Co.,* 453 U.S. 322, 335–36, 101 S.Ct. 2789, 2797–98, 69 L.Ed.2d 672 (1981).

■ As an initial matter, the court finds paragraph 5 to be permissible.[6] It essentially inserts into the stipulation the rule found in the trust indenture, Item 77, Ex. 16, ¶ 12(b), that relieves employers of their pension responsibilities once they have made their required contributions to the Fund.

■ Paragraph 8, on the other hand, is impermissible. It provides:

> The employer agrees that should he not make contributions on 100% of all his Bargaining Unit employees as required herein, the Pension and Retirement Fund *will not pay nor be liable or obligated to pay any Pension and Retirement or other benefits to all his employees involved,* whether or not contributions were made on such individuals, in which event the employer shall pay to any or all such employees any and all Pension and Retirement or other benefits. . . .

Item 77, Ex. 3 (emphasis added). As discussed above, defendants have conceded their liability to employees for whom an employer is obligated to contribute, even if the employer fails to make these contributions. *See supra* part II(C) (citing Item 77, Ex. 7, ¶ 4(f); Item 74, at 83–84; Item 71, at 9). *See also* Item 74, at 10. Moreover, the Trustees have no authority under the trust indenture to hold employers liable to *employees* for unpaid pension contributions. The Trustees may only hold employers liable to the *Fund* for these contributions. *See supra* part II(C) (discussing Trustees' authority under trust instrument).

### G. *Paragraph 10*

Paragraph 10 provides that "[p]ayments to the Fund must be paid by the employer for the employees' paid vacations and holiday periods." Item 77, Ex. 3. The Fund has stipulated that, unless collective bargaining agreements provide otherwise, double contributions will not be required for employees working during their paid holiday periods. Item 74, at 7–8. This stipula-

tion appears to have resolved the dispute over this paragraph.

### H. *Paragraph 11*

■ Paragraph 11 requires:

If an employee is granted a leave of absence, the employer *shall collect from said employee,* prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Pension and Retirement Fund during the period of absence. In the event the employer grants a leave and does not comply with this, the employer must pay the contributions subject to all other requirements of paragraph 2 herein.

Item 77, Ex. 3 (emphasis added). Plaintiffs object that this rule amounts to blatant intermeddling in employer-employee relations. Moreover, plaintiffs note, the Fund has since modified this provision to make the rule dependant on union-employer negotiations. *See* Item 74, at 5 (citing Trustees meeting of June 12, 1989).

The court agrees that to require employers to collect from their employees monies to cover the *employers'* required contributions to the Fund is arbitrary and capricious. The Fund may properly adopt rules which facilitate contributions, but a requirement that employers collect such contributions from employees does nothing to enrich the Fund unless the employer takes the next step and turns over these monies. This holding does not, however, relieve employers of the obligation to make pension contributions during periods of employee absence. *Cf.* 29 C.F.R. §§ 2530.200b–2(a), 2530.200b–3(a) (1990) (counting leaves of absence towards hours of service which must, as a minimum, be credited for employees).

### I. *Paragraph 14*

■ Finally, plaintiffs object to paragraph 14, which covers contributions during periods of illness or injury to an em-

---

6. Paragraph 5 provides:
 During the life of this Stipulation, it is agreed that upon becoming a contributing employer to the Pension Fund and making the payments to said Fund, as provided for herein, the employer shall be relieved of any and all responsibility of providing benefits other than those provided by the Fund.
 Item 42, Ex. 3.

ployee. It requires that whenever a labor agreement supplies benefits for illness or off-the-job injury, the employer must contribute to the Fund: (a) for four weeks, if a regular employee is absent because of illness or off-the-job injury and notifies the employer of such absence, or (b) until such employee returns to work, but not for more than twelve months, if a regular employee is injured on the job. These periods may be changed by collective bargaining if the union and employer both initial this paragraph.

Plaintiffs objection to this paragraph is inappropriate. By its plain terms it may be modified by collective bargaining. As such, its inclusion in the stipulation is not arbitrary and capricious.

## CONCLUSION

To review the conclusions of each section:

### I. STANDING

Plaintiffs Morse and Clancy have standing to proceed.

### II. THE 1979 STIPULATION

#### A. *Paragraph 1(b)*

The Fund's rule requiring contributions to be made on non-union and casual employees is not arbitrary and capricious.

Further, as a general matter the Trustees may prescribe rules in conflict with such agreements and not exceed their authority.

#### B. *Paragraph 1(a)*

The Trustees may make any rule that is not arbitrary and capricious. The stipulation's requirement binding employers to compliance with such rules is not itself arbitrary and capricious.

#### C. *Paragraph 2*

The provisions of paragraph 2 are not arbitrary and capricious. They clearly delineate a delinquent employer's obligations to the Fund.

#### D. *Strike Clause, Paragraphs 2 and 3*

The Strike Clauses of paragraphs 2 and 3 are impermissibly arbitrary and capricious.

#### E. *Paragraph 4*

Paragraph 4, which permits the Fund to audit an employer's payroll records, is not arbitrary and capricious.

#### F. *Paragraphs 5 and 8*

Paragraph 5's provisions are not arbitrary and capricious. Defendant admits that paragraph 8, on the other hand, exceeds its authority.

#### G. *Paragraph 10*

No controversy appears to remain over paragraph 10.

#### H. *Paragraph 11*

Paragraph 11, to the extent it requires employers to collect from employees contributions due for periods of absence, is arbitrary and capricious.

#### I. *Paragraph 14*

Paragraph 14, because it may be modified by collective bargaining agreement, is not arbitrary and capricious.

With this order the preliminary injunction issued in the *Truckmen's* case on April 9, 1982, Item 16, and amended on June 23, 1982, Item 19, is hereby lifted. Also lifted is the temporary restraining order issued in the *Morse* case on August 30, 1985, Item 4 (*Morse*), and extended on September 30, 1985, Item 6 (*Morse*).

So ordered.